# STATE OF CONNECTICUT *v.* SAMUEL SAEZ
## (AC 18069)

Spear, Zarella and Healey, Js.

Argued February 29—officially released October 3, 2000

*Tracey M. Lane*, with whom was *Jon L. Schoenhorn*, for the appellant (defendant).

*Toni M. Smith-Rosario*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Edward R. Narus*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SPEAR, J. The defendant, Samuel Saez, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1). The defendant claims that the state's attorney impermissibly bolstered the victim's testimony during closing argument and impermissibly commented on the defendant's election not to testify, thereby depriving him of a fair trial. He also claims that the trial court improperly instructed the jury on consciousness of guilt because there was no adequate foundation in the evidence for such a charge. We affirm the judgment of the trial court.[1]

The jury reasonably could have found the following facts. The victim, L, met the defendant in September or October, 1994, when she was fifteen years old. The defendant gave the victim and a friend a ride home from the Westfarms Mall. Approximately eight months later, on May 24, 1995, L encountered the defendant again. The defendant was driving a black Acura Vigor and the victim recognized him. They began a conversation and the victim asked the defendant for a ride. After stopping at a clothing store and a package store, the defendant drove to 52 Atwood Street in Hartford and parked in the back of an apartment building. The victim, although at first uncomfortable, agreed to go upstairs to an apartment with the defendant.

Once in the apartment, the defendant drank a beverage called Cisco. The victim took a sip, but she did not like it. At the defendant's suggestion, the victim then

---

[1] The defendant also claims that the court improperly refused to give a missing witness instruction at his request. Our Supreme Court abandoned the missing witness rule in criminal cases in *State* v. *Malave*, 250 Conn. 722, 738, 737 A.2d 442 (1999) (en banc), cert. denied, 528 U.S. 1170, 120 S. Ct. 1195, 145 L. Ed. 2d 1099 (2000). This court has decided that *Malave* applies retroactively. See *State* v. *Quinones*, 56 Conn. App. 529, 533, 745 A.2d 191 (2000).

tried on a new outfit that she had purchased at the clothing store. When she walked into the living room in the outfit, the defendant complimented her by saying that she looked nice. The victim then went back to the bathroom to change. The defendant tried to come into the bathroom with her, but she pushed him away and locked the door. After she changed her clothes, she opened the bathroom door and the defendant attempted to kiss her. Ultimately, the defendant engaged in forcible vaginal intercourse with the victim.

After the defendant finished the sexual assault, he and the victim returned to his car. He allowed the victim to drive. She parked the car in front of her house, went in and reported what had happened to her aunt. The victim's aunt had her boyfriend attempt to block the defendant from leaving by placing his car in the street in a position that prevented the defendant from going forward. The defendant backed up the street and left the scene.

The defendant was subsequently arrested and convicted of sexual assault in the first degree. This appeal followed.

I

The defendant claims that the prosecutor improperly bolstered the victim's credibility by telling the jury that, in his opinion, she was truthful. The following comments were made by the prosecutor during closing arguments: "Again, the demeanor on the stand. You saw her testify. . . . You listened to her answers. Not only the ones that I posed but the cross-examination questions of [defense counsel] posing questions to her. How did she answer those questions? Was she evasive? Did she say she's unsure of things? She directly answered those questions and I suggest to you, if you look at her testimony, she was very forthright. She was asked a question, she would answer it. She would answer it however

it is and not pull any punches. I think that's an issue of credibility. She's not sitting there fabricating, thinking and contemplating and coming up with answers and being hesitant in doing that.

\* \* \*

"If you look at those circumstances I think you can find that she acted reasonably in what we would consider to be an appropriate course of action and I think that's what makes her credible. . . .

\* \* \*

"I mean, when people make up stories don't they use the best evidence. They're self-serving statements. They don't tell you things that make you doubt their credibility or question their credibility, do they? And I think that that's what makes it more credible is that she does tell you those things because they [happened]. . . . I think if you look at that, I mean, this is not a John Grisham novel. You know, is this the story, did she create this, create all these details, somehow, someway? I don't think so. I think if you examine it, you'll find it's not the case. I think what you're going to find is this is a young girl who put herself in harm's way. . . .

\* \* \*

"She has no motive to lie to you and make this story up. She's told you everything from the get go about what she did and why. Plain out. Same way I speak."

The defendant failed to object to these remarks at trial but seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[2] Our Supreme Court

---

[2] In *Golding*, our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

has previously "acknowledged that prosecutorial misconduct can occur in the course of closing argument. *State* v. *Atkinson*, 235 Conn. 748, 768–69, 670 A.2d 276 (1996). Furthermore, it is improper for a prosecutor to express his or her own opinion, either directly or indirectly, as to the credibility of witnesses. *State* v. *Hammond*, 221 Conn. 264, 289, 604 A.2d 793 (1992); *State* v. *Williams*, 204 Conn. 523, 541, 529 A.2d 653 (1987). It is well settled, however, that a defendant may not prevail under *Golding* . . . unless the prosecutorial impropriety was so pervasive or egregious as to constitute an infringement of the defendant's right to a fair trial . . . . Finally, we must review the challenged comments in the context of the entire trial, with due regard to the extent to which the objectionable remarks were invited by defense conduct or argument. *State* v. *Williams*, 231 Conn. 235, 246–47, 645 A.2d 999 (1994); *State* v. *Richardson*, 214 Conn. 752, 759–60, 574 A.2d 182 (1990)." (Internal quotation marks omitted.) *State* v. *Satchwell*, 244 Conn. 547, 564–65, 710 A.2d 1348 (1998).

We must determine whether the claimed remarks were improper. None of the challenged remarks improperly bolstered the victim's credibility because the prosecutor was commenting on the evidence and reasonable references as to credibility that the jury could draw from the evidence. The prosecutor noted that the victim was forthright, direct and unhesitant in answering questions. He also argued that she was credible because she told things that were not self-serving and had indeed put herself in harm's way. In each instance where the prosecutor used the phrase "I think," he was discussing evidence that supported the victim's credibility. This claim, therefore, is clearly without merit.

## II

The defendant's second claim of improper argument is that the prosecutor commented on the defendant's

failure to testify. The defendant asserts that the prosecutor's statement, "We don't know what's in his mind," was an improper comment on the defendant's failure to testify. The defendant failed to raise any objection to the statement at trial and now seeks review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40.

We have held that a claim that a prosecutor improperly commented on a defendant's failure to testify does qualify for *Golding* review. The state does not dispute that the claim here is of constitutional magnitude alleging the violation of a fundamental constitutional right and that the record is adequate for appellate review. "Appellate review of similar belated claims of prosecutorial comment on a criminal defendant's failure to testify has frequently been granted. *State* v. *Marra*, 222 Conn. 506, 533, 610 A.2d 1113 (1992); *State* v. *Walker*, 206 Conn. 300, 306–307, 537 A.2d 1021 (1988); *State* v. *Magnotti*, 198 Conn. 209, 215, 502 A.2d 404 (1985); *State* v. *Evans*, 165 Conn. 61, 70–71, 327 A.2d 576 (1973)." *State* v. *Johnson*, 44 Conn. App. 125, 132, 688 A.2d 867 (1997). Although the claim is reviewable, we conclude that it founders on the third prong of *Golding* in that there was no violation of the defendant's constitutional rights that infringed on his right to a fair trial.

The prosecuting attorney is not allowed to comment on the defendant's failure to testify because to do so would violate the fifth amendment to the United States constitution. *Griffin* v. *California*, 380 U.S. 609, 615, 85 S. Ct. 1229, 14 L. Ed. 2d 106, reh. denied, 381 U.S. 957, 85 S. Ct. 1797, 14 L. Ed. 2d 730 (1965). We disagree with the defendant's claim that there was such an improper comment here. With respect to this claim, we apply the following test: "Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify?"

(Internal quotation marks omitted.) *State* v. *Lemon*, 248 Conn. 652, 659, 731 A.2d 271 (1999).

First, we must set the context for the prosecutor's statement. The defense in this case was that the victim consented to the sexual intercourse, and defense counsel argued to the jury as follows: "People are tempted with sexual temptations from time to time, lawful, consensual sexual temptations, both men and women. It's our contention that he perhaps fell victim to this, that he weakened, that he cheated on the woman that bore him a child and who he's had this long relationship with. Not an angel but that does not make him a rapist." Responding to this argument, the prosecutor argued as follows: "[Defense counsel] tells you a lot of things that are in the defendant's mind to suggest that this is what happened or he gave into temptation or he weakened, things like that, that that's in his mind. Well, we don't know what's in his mind." This comment is not attacked by the defendant as being improper. The prosecutor went on to argue that "You don't have any evidence of what was in his mind. You can't draw inferences. He's asking you to speculate by looking at what happened and say, well, this is what he could have been doing."

Continuing his argument that defense counsel was asking the jury to speculate on the motives of the parties, the prosecutor argued: "Now, you know, [defense counsel] wants to speculate and say, well, you know how or what sixteen year old girls might do and stuff. Well, what might twenty-three year old boys do? Get a girl back to their room. I mean, he's suggesting that while boys are trained to do this. Maybe they are, maybe they aren't. I don't know. It depends on the kid, I suppose. We can't generalize. *We don't have that information. We don't know what's in his mind. We know what's in her mind.* She was not going to do that but she lost control of that situation. He became the boss. He was empowered. He controlled her actions and her

movements." The defendant challenges that portion of the prosecutor's remarks that we have emphasized.

It is clear from the context of the prosecutor's argument that he was rebutting the defendant's invitation to the jury to speculate that the defendant succumbed to temptation and engaged in consensual sexual relations with the victim without any evidence that that was in fact the case. As the state correctly points out, this argument was a refutation of the defendant's claim of consent and did not lead the jury naturally and necessarily to conclude that the prosecutor was commenting on the defendant's failure to testify. It was perfectly appropriate for the prosecutor to argue that there was no evidence to support the claimed defense. See *State* v. *Satchwell,* supra, 244 Conn. 565.

### III

The defendant's final claim is that the court improperly gave a consciousness of guilt instruction.[3] The first prong of this three part claim is that the charge was improper because the defendant fled the scene out of fear for his physical safety. This claim was not made at trial, and, therefore, we decline to review it. We are not required to review a claim that was not distinctly raised at trial. See Practice Book § 60-5; *Bell Atlantic Mobile, Inc.* v. *Dept. of Public Utility Control,* 253 Conn.

---

[3] The court instructed the jury as follows: "Now, flight when unexplained tends to prove consciousness of guilt. The flight of a person accused of a crime is a circumstance which, when considered together with all the facts of the case, may justify a finding of the defendant's guilt. However, flight, if shown, is not conclusive. It is to be given the weight to which you the jury think it's entitled to under the circumstances. In this case, the state has presented evidence through the testimony of [M] that after being told by her niece that the defendant had raped her and was sitting in the car, she approached the defendant to engage him in conversation until the police arrived. The defendant inquired whether [L] was coming out. [M] replied, 'No, I know what you did to her.' The defendant replied, 'I don't know what you're talking about.' [M] then stated, 'You raped her.' The defendant denied doing so and backed his car all the way down the street."

453, 485, 754 A.2d 128 (2000). This claim also does not qualify for *Golding* or plain error review.

Next, the defendant claims that the evidence was insufficient to support a consciousness of guilt instruction because the evidence merely showed that he left the scene. We disagree.

The defendant left the scene after the victim's aunt told him that she knew about the rape. He struck the car of the aunt's boyfriend and backed down the street a considerable distance to get away. We have held that "all that is required is that the evidence have relevance, and the fact that ambiguities or explanations may exist which tend to rebut an inference of guilt does not render evidence of flight inadmissible but simply constitutes a factor for the jury's consideration. . . . The probative value of evidence of flight depends upon all the facts and circumstances and is a question of fact for the jury." (Internal quotation marks omitted.) *State* v. *Cox*, 50 Conn. App. 175, 186, 718 A.2d 60 (1998), aff'd, 251 Conn. 54, 738 A.2d 652 (1999).

The defendant finally claims that the court surprised him with the flight instruction. He asserts that this surprise made the instruction an abuse of the court's discretion. In support of his claim, the defendant asserts that a request for a consciousness of guilt instruction must be made before a defendant rests so that the defendant has an opportunity to explain the flight.

Practice Book § 16-22, which governs the timing of the filing of requests to charge, provides in relevant part: "Written requests to charge the jury . . . must be filed . . . before the beginning of [closing] arguments or at such an earlier time as the judicial authority directs . . . ." The defendant does not claim that the state's request was made after closing arguments began or in violation of any court order directing the state to file its requests to charge. He cites no authority for the

proposition that a request to charge on consciousness of guilt must be filed before the defendant rests his case. He, therefore, cannot prevail on this claim.

The judgment is affirmed.

In this opinion the other judges concurred.