# STATE OF CONNECTICUT *v.* AUTILIO A. PEREIRA
## (AC 20490)

Dranginis, West and Daly, Js.[1]

---

[1] This appeal was argued before a panel comprised of Judges Dranginis, West and Daly. Although Judge Daly agreed with the other judges regarding the resolution of this appeal, he died before he had the opportunity to concur with the written decision. The parties stipulated, however, that they would not reargue the appeal to this court with a panel consisting of the original two judges and an additional judge. Rather, the parties stipulated that they would permit the remaining two judges alone to render a written decision.

Argued June 19—officially released September 3, 2002

*Robert P. Pickering*, with whom, on the brief, was *John M. Cicilline*, pro hac vice, for the appellant (defendant).

*Michele C. Lukban*, assistant state's attorney, with whom, on the brief, were *Kevin T. Kane*, state's attorney, *Robert M. Spector*, former assistant state's attorney, and *Stephen M. Carney*, assistant state's attorney, for the appellee (state).

*Opinion*

WEST, J. The defendant, Autilio A. Pereira, appeals from the judgment of conviction, rendered after a jury trial, of five counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1)[2] and five counts of risk of injury to a child in violation of General Statutes (Rev. to 1997) § 53-21.[3] On appeal,

---

[2] General Statutes § 53a-71 (a) provides in relevant part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and: (1) Such other person is thirteen years of age or older but under sixteen years of age and the actor is more than two years older than such person . . . ."

[3] General Statutes (Rev. to 1997) § 53-21 provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child shall be guilty of a class C felony."

the defendant claims that (1) the trial court improperly (a) instructed the jury in violation of his state and federal constitutional rights and (b) admitted prejudicial evidence that deprived him of a fair trial, and (2) the prosecutor's closing argument to the jury deprived the defendant of a fair trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. During the summer of 1997, when the events that form the basis of the defendant's conviction took place, the victim was fourteen years old and the defendant was thirty-two years old.[4] The two lived in the same apartment building in Norwich, he with his family on the second floor, and she with her mother and two sisters on the third floor. They frequently saw one another in the hallways and would stop and talk. Residents of the apartment complex knew the defendant and that he owned a silver colored Porsche automobile.

After the school year ended in June, 1997, the defendant gave the victim his pager number so that she could contact him. When the victim paged the defendant, he would return her telephone call and they would talk. One evening, the defendant suggested that the victim go for a ride with him. Because it would not look right for the victim to be seen getting into the Porsche with him, the defendant arranged to meet the victim around a corner at the far side of the apartment building. Once the victim was in the vehicle, the defendant drove to a side street and parked the vehicle.

The defendant instructed the victim not to be nervous around him and that he wanted her to be comfortable. He began to kiss her. Then the defendant unbuttoned his pants and asked the victim if she wanted to lick his

---

[4] In keeping with our policy to protect the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom her identity may be revealed. See General Statutes § 54-86e.

penis. She placed the defendant's penis in her mouth for approximately one minute, but stopped because she did not like the taste. The two returned to the place where they had met, and the defendant told the victim he wanted to date her. He said that it did not matter that she was young. The defendant told the victim to page him when they could talk.

A few days later, the victim paged the defendant and informed him that they could meet because her mother was out. At approximately 7 p.m., they met where they had done so previously and went in the Porsche to a nearby park. Again, they kissed and the defendant asked the victim to perform oral sex on him. She complied.

Rain fell on the morning of July 24, 1997. Due to the inclement weather, the victim did not report to her summer job. She knew that the defendant, who poured concrete for a living, would not have to go to his job and paged him. In response, the defendant telephoned the victim, asked if anyone was home and if he could come upstairs. The defendant went to the victim's apartment at approximately 11 a.m. The victim sat on the defendant's lap in the living room for about five minutes. Thereafter they went into the victim's bedroom, sat on the bed and engaged in foreplay. The victim was uncomfortable about the situation, but the defendant reassured her. The defendant performed oral sex on the victim and then engaged in intercourse. When the victim tried to stop the defendant, he moved her hand and calmed her. Later that day, when they saw one another, the defendant told the victim he wanted her to call him. He told her that it was not a good idea to talk to one another where others could observe them.

The following Saturday morning, the victim paged the defendant and told him to come to her apartment because she was alone. The defendant went upstairs immediately, and the two went directly to the victim's

bedroom and engaged in sexual intercourse. The defendant left shortly thereafter because his wife was expected home soon.

On or about August 2, 1997, the victim paged the defendant at night. They arranged to meet, but not where they had done so previously. One of the victim's friends waited with her on North Street, near the entrance to the apartment complex. The friend knew that the defendant was coming to meet the victim. The defendant arrived in his wife's red motor vehicle because his Porsche was not working. They went to a parking lot where the defendant removed a child's car seat from the rear passenger seat, and the two engaged in sexual intercourse. The defendant asked the victim whether she had told her friends about their relationship and warned her that they could both get into trouble if she did.

In fact, the victim had confided in her friends. On the evening of August 10, 1997, the defendant's wife telephoned the victim's mother and asked if she and the victim would come to her apartment. One of the victim's friends had told the defendant's wife that the defendant and the victim were having an affair. The defendant's wife confronted the victim. The victim denied the affair. When she returned to her apartment, the victim's mother telephone the police. The victim denied the affair to the responding officer. She later asserted that she believed that she was in love with the defendant and wanted to protect him.

The next day, the victim's mother informed her that they were going to a hospital so that the victim could be examined. The victim knew that a pelvic examination would reveal that she had engaged in sexual intercourse. On the way to the hospital, her mother again asked the victim whether she was having an affair with the defendant. In response, the victim admitted that

she was. The victim was examined by an emergency room physician, who observed that the victim's hymen had been perforated.

The victim went to live with her father in a different community. The victim engaged in counseling with a licensed clinical psychologist from September, 1997, through June, 1998. The victim disclosed her sexual encounters with the defendant to her therapist. Between September, 1998, and June, 1999, the victim told a counselor at a school based health care center of the defendant's sexual behavior toward her. Additional facts will be discussed where necessary.

I

INSTRUCTIONAL CLAIMS

The defendant claims that the court's instructions to the jury violated his rights under the fifth, sixth and fourteenth amendments to the United States constitution, and article first, § 8, of the constitution of Connecticut by (1) shifting the burden of proof to him and impinging on the presumption of innocence, and (2) failing to charge on the victim's delay in reporting the incidents.

We must first consider the state's assertion that the defendant's instructional claims are not reviewable because they were not preserved at trial. The defendant contends that he preserved his claims properly. "A party may preserve for appeal a claim that a jury instruction was improper either by submitting a written request to charge or by taking an exception to the charge as given. Practice Book § 16-20. If counsel follows the latter course, he or she must 'state distinctly the matter objected to and the ground of objection. . . .' Id." *Pestey* v. *Cushman*, 259 Conn. 345, 372–73, 788 A.2d 496 (2002). "The purpose of the rule is to alert the court to any claims of error while there is still an opportunity

for correction in order to avoid the economic waste and increased court congestion caused by unnecessary retrials." (Internal quotation marks omitted.) *State* v. *Miller*, 186 Conn. 654, 658, 443 A.2d 906 (1982).

A

The defendant's claim that the court improperly shifted the burden of proof and impinged on his presumption of innocence is based on the following portion of the charge: "If a defendant should attempt to make false statements respecting himself and his conduct concerning the matter on trial, *you may consider this evidence tending to show a guilty connection by the defendant with the crime charged.*" (Emphasis added.) Defense counsel objected to the cited portion of the instruction, stating that the court had "indicated . . . that if the defendant should attempt to make false statements respecting himself or his conduct concerning the matter of trial, you should consider this evidence tending to show a guilty—a guilty connection by the defendant with the crime charged. This section, on the testimony of the defendant, basically implies, gives some sort of added scrutiny to the defendant that shouldn't be there. He's presumed innocent. He's presumed innocent on the [witness] stand. There should be no special charges as to him. I point out that the court did not make any similar statements as to the victim, where credibility is an important thing, and she's not on trial. He's presumed innocent, and therefore there should not be, in my opinion, anything to say."

In his brief to this court, the defendant has argued that the court's use of the term "guilty connection" was improper because it "singled out his testimony, reduced the state's burden of proof and improperly infringed on [his] constitutional right to testify in his defense." We agree with the state that the defendant did not preserve his claim that the court's instruction shifted the burden

of proof or infringed on his right to testify. We discern no difference, however, between the terms "added scrutiny" and "singled out" with respect to the defendant's testimony. Nonetheless, we conclude that defense counsel's objection at trial is not the same as the claim raised on appeal.

At trial, counsel addressed his objection to the court's instruction regarding the defendant's false statements in general. On appeal, the defendant cites R. Leuba & R. Fracasse, Connecticut Selected Jury Instructions Manual (1998) § 2.20, p. 49, and concedes that a court properly may charge the jury with respect to statements and acts that may tend to show a consciousness of guilt. The basis of his claim is the court's use of the term "guilty connection" rather than the preferred term "consciousness of guilt."[5] The defendant did not bring that difference to the court's attention at a time when the court could have clarified its instruction to the jury. For that reason, we will not review the defendant's claim.

### B

The defendant's second instructional claim is that the court improperly failed to focus on the victim's

---

[5] Our Supreme Court has held that use of the term "guilty connection" in the context of an otherwise proper instruction did not dilute the state's burden of proof or burden the defendant's right to testify; *State* v. *Francis*, 228 Conn. 118, 132, 635 A.2d 762 (1993); and therefore that there was no federal constitutional violation. See also *Goodrum* v. *Commissioner of Correction*, 63 Conn. App. 297, 309–10, 776 A.2d 461 (phrase identifies permissive inference rather than forced conclusion), cert. denied, 258 Conn. 902, 782 A.2d 136 (2001). In concluding that the term guilty connection did not violate the defendant's rights under the fifth and fourteenth amendments to the United States constitution, our Supreme Court in *Francis* advised trial courts that "because of the possibility of the jury's confusing 'guilty connection' as indicating evidence of guilt itself rather than evidence of consciousness of guilt; [*State* v. *Brown*, 199 Conn. 14, 27, 505 A.2d 690 (1986)]; it would be preferable for the trial court to omit the phrase 'guilty connection' from its instructions regarding false statements made by the defendant." *State* v. *Francis*, supra, 133 n.16.

delay in reporting the sexual assault in violation of his constitutional rights and *State* v. *Troupe*, 237 Conn. 284, 305, 677 A.2d 917 (1996) (en banc). The state argues that the charge given by the court substantially complied with the defendant's request to charge.[6] The defendant's response to the state's position is that his counsel took an exception to the court's instruction after it was given.

Defense counsel articulated his exception as follows. "The charge on constancy, I think, goes a little too far in the sense that it . . . says why she kept silent about

The defendant here did not bring *Francis* to the court's attention when he objected to the charge.

[6] With respect to constancy of accusation, the court instructed the jury as follows: "As you know, statements made out of court by a witness generally are not admissible because those out-of-court statements lack the support of the oath that a witness takes in court. However, there are exceptions to that general rule, and we have one of those exceptions in this case.

"Now, the complaining witness here, [the victim], has testified here in court as to the offenses the state and she claim were committed upon her. Now, if that were all we had, you would ask yourselves, why did she keep silent about it until she came here before the court to testify. So, for the purpose of corroborating her testimony, the state is permitted to prove that outside of court, she made complaints or statements about what was done to her by the defendant. She made these statements to other persons. . . .

"Now, this evidence was admitted to corroborate her testimony in court. It is to be considered by you on a very—on a limited basis, and considered by you only in determining the weight and credibility of [the victim's] testimony. The fact that [the victim] made these statements is not being offered to prove that these events happened. But merely that she claimed they happened and to corroborate her in-court testimony. In determining the extent of such corroboration in her statements out of—the extent of such corroboration of her statements out of court, you will carefully consider all the circumstances under which they were made and, particularly, you should consider whether she has been constant and consistent in what she has said.

"In addition, for the purpose of corroborating [the victim's] testimony, her out-of-court statements may also be used for the purpose of impeaching her testimony. Therefore, you may rely on and consider any contradictions, inconsistencies or falsities which you find in the [victim's] out-of-court statements in assessing the weight and credibility of her testimony."

We have reviewed the defendant's request to charge and conclude that the instruction given by the court was more comprehensive than what the defendant had requested.

what she did until she came before the court to testify. I think with the new cases and the like out, that's not what is—the purpose of those, sort of restrictive. I'm just afraid that that somehow bootstraps in what it is the state has been trying to do in this case."

We cannot discern how the exception articulated by counsel was intended to apprise the court of the claim the defendant is making in this court, specifically, that "a person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint [and that] the defendant is entitled to an instruction that any delay by the victim in reporting the incident is a matter for the jury to consider in evaluating the weight of the victim's testimony." Id., 304–305. It is the defendant's position that his counsel's use of the term "new cases" adequately apprised the court of his position. It is difficult for us to understand how the court was to divine *Troupe* from the defendant's exception where the defendant himself did not even cite *Troupe* in his request to charge, in contravention of Practice Book § 42-18.[7] We therefore conclude that the defendant failed to preserve for our review his constancy of accusation claim with respect to the court's instruction.

## II

## EVIDENTIARY CLAIMS

The defendant has raised three evidentiary claims on appeal. He claims that the court improperly (1) failed to conduct a *Porter*[8] hearing before letting the state

---

[7] Practice Book § 42-18 (a) provides in relevant part: "When there are several requests, they shall be in separate and numbered paragraphs, each containing a single proposition of law clearly and concisely stated *with the citation of authority upon which it is based* . . . ." (Emphasis added.)

[8] *State v. Porter*, 241 Conn. 57, 698 A.2d 739 (1997) (en banc), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998). In *Porter*, our Supreme Court adopted the standard for the admissibility of scientific evidence set forth by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). "This

present the testimony of the emergency room physician who examined the victim, (2) permitted the state's expert witness to bolster the victim's credibility and (3) admitted testimony under the constancy of accusation doctrine in violation of *Troupe*.[9]

We review evidentiary claims pursuant to an abuse of discretion standard. "Generally, [t]rial courts have wide discretion with regard to evidentiary issues and their rulings will be reversed only if there has been an abuse of discretion or a manifest injustice appears to have occurred. . . . Every reasonable presumption will be made in favor of upholding the trial court's ruling, and it will be overturned only for a manifest abuse of discretion." (Internal quotation marks omitted.) *State* v. *O'Neil*, 67 Conn. App. 827, 831, 789 A.2d 531 (2002).

A

The defendant claims that the court improperly admitted the testimony of the emergency room physician who examined the victim because the court failed to inquire as to the scientific basis for the witness' testimony, and the testimony was inconclusive and therefore unreliable and improper for the jury to consider. The state again argues that we should not review the claim because it was not preserved at trial. We agree with the state.

"Our rules of practice make it clear that counsel must object to a ruling of evidence [and] state the grounds upon which objection is made . . . to preserve the grounds for appeal. . . . These requirements are not

entails a two part inquiry: whether the reasoning or methodology underlying the [scientific theory or technique in question] is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." (Internal quotation marks omitted.) *State* v. *Porter*, supra, 63–64.

[9] *State* v. *Troupe*, supra, 237 Conn. 284.

simply formalities. . . . We consistently have stated that we will not consider evidentiary rulings where counsel did not properly preserve a claim of error by objection . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Lizotte*, 200 Conn. 734, 742A, 517 A.2d 610 (1986).

The following facts are relevant for our resolution of the defendant's claim. The defendant filed a motion seeking a hearing pursuant to *State* v. *Porter*, 241 Conn. 57, 698 A.2d 739 (1997) (en banc), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998). In that motion, the defendant represented that the police had received a complaint of sexual misconduct that gave rise to the charges against him, the victim was examined by a physician in a hospital, the examining physician provided a discharge diagnosis of alleged statutory rape on the basis of the physical examination and the history provided by the victim's mother, there are no valid scientific studies or evidence that demonstrate that the physical symptoms are directly correlated to alleged statutory rape and that such opinion or correlation as evidence has no grounding in scientific fact, but is based on speculation and hearsay.

The court granted the defendant's motion for a *Porter* hearing and conducted the hearing outside of the presence of the jury. At that time, the court also ruled on a medical report completed by the physician that contained statements that the victim's chief complaint was statutory rape and a discharge diagnosis of alleged statutory rape. Counsel for the defendant argued that those portions of the medical report should be redacted as hearsay statements made by the victim's mother. The state did not object, and the court ruled that the report would not be admitted into evidence and that the physician's testimony would be limited to his physical findings and the purpose of his examination. The physi-

cian testified in accordance with the court's ruling.[10] Defense counsel cross-examined the physician, but asked no questions concerning and raised no objection as to the validity of the physician's methodology.

The defendant's claim as to the court's failure to conduct a *Porter* hearing with respect to the methodology the physician employed to determine whether the victim's hymen was perforated was not preserved at trial.[11] We therefore decline to review the claim.

### B

The defendant's second evidentiary claim is that the court improperly admitted into evidence the testimony of the state's expert witness. More specifically, the defendant claims that the expert's testimony, in response to a hypothetical question posed by the state, bolstered the victim's credibility. We are not persuaded.

The following facts are relevant to the defendant's claim. The state called Rosemary Niedzwicki, a licensed

---

[10] The physician testified as to his credentials, experience and his pelvic examination of the victim. He found that the victim's hymen had been perforated. He explained the anatomy of the hymen, how perforation is determined and the various ways in which the hymen can be perforated. Although he found that the victim's hymen was perforated, he had no way of knowing how or when it was perforated.

[11] Although we decline to review the defendant's claim, we make clear that *Porter* does not apply "to all expert testimony, but only to that which involves 'innovative scientific techniques.'" *State* v. *Reid*, 254 Conn. 540, 546, 757 A.2d 482 (2000). "[S]ome scientific principles have become so well established that an explicit [*Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)] analysis is not necessary for admission of evidence thereunder. . . . Evidence derived from such principles would clearly withstand a *Daubert* analysis, and thus may be admitted simply on a showing of relevance." (Internal quotation marks omitted.) *State* v. *Reid*, supra, 546. The circumstances here of the physician testifying as to his observations based upon his education, skill and training are analogous to those of *Reid* and *State* v. *Hasan*, 205 Conn. 485, 491–92, 534 A.2d 877 (1987), in which the testimony at issue "concerned a method, the understanding of which [was] accessible to the jury . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Reid*, supra, 547.

clinical social worker with special training in child sexual abuse, to testify as an expert witness. Niedzwicki had never treated and did not know the victim. She testified, in part, about the needs, characteristics and behaviors of children who have been sexually abused. The state posed a hypothetical question that paralleled the facts of this case and asked Niedzwicki, on the basis of her education, experience and familiarity with the literature on child sexual abuse, whether the manner in which the child in the hypothetical disclosed the sexual abuse was behavior typical of a child who had been sexually abused under those circumstances. Niedzwicki answered, "yes." She also testified that she was not in a position to evaluate whether anything that the victim in this case said or did was credible. The defendant objected to Niedwzicki's testimony.

"Expert testimony should be admitted when: (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues. . . . We review claims of improper admission of expert testimony under an abuse of discretion standard." (Citations omitted; internal quotation marks omitted.) *State* v. *Freeney*, 228 Conn. 582, 591, 637 A.2d 1088 (1994).

Expert testimony about the characteristics and behavior of victims of abuse, be it battered woman syndrome or sexual abuse, has been addressed previously by appellate courts of this state. See, e.g., id., 589–93; *State* v. *Borrelli*, 227 Conn. 153, 629 A.2d 1105 (1993); *State* v. *Niemeyer*, 55 Conn. App. 447, 740 A.2d 416 (1999), rev'd in part on other grounds, 258 Conn. 510, 782 A.2d 658 (2001). Our Supreme Court has stated "that there is a critical distinction between admissible expert testimony on general or typical behavior patterns of . . . victims and inadmissible testimony directly

concerning the particular victim's credibility." (Internal quotation marks omitted.) *State* v. *Borrelli*, supra, 173.

An "expert may testify only as to the general behavior of victims of domestic abuse. He may not give an opinion as to whether *this particular victim* told the truth or whether *this particular victim* in fact suffered from domestic abuse. . . . These questions are solely within the province of the jury." (Citation omitted; emphasis in original.) *State* v. *Niemeyer*, supra, 55 Conn. App. 453. On the basis of our review of the transcript and the arguments of the parties on appeal, we conclude that the court properly admitted Niedzwicki's testimony with respect to the hypothetical question posed by the state, as it did not intrude on the jury's function as the arbiter of credibility and provided guidance to the jury on a matter that is not common knowledge.

C

The third of the defendant's evidentiary claims is that the court improperly admitted evidence pursuant to the constancy of accusation doctrine in violation of *State* v. *Troupe*, supra, 237 Conn. 284, and its progeny. We disagree.

"[W]hether evidence is admissible under the constancy of accusation doctrine is an evidentiary question that will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Cansler*, 54 Conn. App. 819, 825, 738 A.2d 1095 (1999). An appellate court will make every reasonable presumption in favor of upholding the trial court's evidentiary rulings. See *State* v. *Orhan*, 52 Conn. App. 231, 237, 726 A.2d 629 (1999).

In *Troupe*, our Supreme Court held that "constancy of accusation witnesses in sexual assault cases would be confined to testify only regarding the fact that the

victim complained to them, the time when that complaint was made, and the limited details of the assault, including the identity of the alleged perpetrator as reported to the witness by the victim." *State* v. *Kelly*, 256 Conn. 23, 36, 770 A.2d 908 (2001). "Accordingly . . . any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator. [*State* v. *Troupe*, supra, 237 Conn. 304.] Additionally, to admit the constancy of accusation testimony, the trial court must nevertheless, balance the probative value of the evidence against any prejudice to the defendant. Id., 305." (Internal quotation marks omitted.) *State* v. *Kelly*, supra, 36.

"[S]uch evidence is admissible only to corroborate the victim's testimony and not for substantive purposes. Before the evidence may be admitted, therefore, the victim must first have testified concerning the facts of the sexual assault and the identity of the person or persons to whom the incident was reported." *State* v. *Troupe*, supra, 237 Conn. 304–305. Furthermore, "the rule adopted in *Troupe* did not affect other rules of evidence or render inadmissible evidence that would otherwise be admissible under other rules of evidence, such as exceptions to the general rule against hearsay." *State* v. *Kelly*, supra, 256 Conn. 37.

In his principal appellate brief, the defendant cites questions that were asked of six witnesses and argues that the court improperly admitted their constancy of accusation testimony because both the state and the court asked the witnesses broad questions that elicited extensive, detailed narratives rather than asking questions tailored to elicit the scope of testimony permitted by *Troupe*. We disagree that the questions invited expansive responses. Of the seventeen questions cited

by the defendant in his brief, all but three required a yes or no answer.[12] None of the yes or no questions violated the confines of *Troupe.* Some of the questions asked in no way related to constancy of accusation and were, in fact, directed to fact witnesses.[13] Although the defendant carefully included the questions he disliked, he did not provide the response or explain how the response was either irrelevant, immaterial, in violation of one of the rules of evidence or prejudicial to him pursuant to the constancy of accusation rule. The defendant merely included portions of the witnesses' testimony in his appendix and invited us to read it. It is not the job of an appellate court to search through the transcript on behalf of the defendant to find an error that he claims was prejudicial to him.

The defendant's argument as to the prejudice that supposedly befell him is that the testimony of the constancy witnesses was not constant because those witnesses offered different testimony as to the nature of the victim's relationship with him. From the perspective of the court, inconsistent testimony from the state's witnesses rarely is prejudicial to a defendant. If anything, it will call into question the validity of the state's case in the eyes of the jury, which is the arbiter of credibility.

---

[12] Examples of some of the questions requiring a yes or no answer included:

"Q: And did she tell you of any facts or make any allegations which would indicate who perpetrated the sexual assault?

"Q: And the counseling that you provided to her, was it specific to sexual abuse?"

"Q: Did she indicate to you that it was more than one sexual act?"

"Q: After she said to you that they had sex, were there other substantial conversations on this topic?"

[13] Examples of questions that did not relate to constancy of accusation included:

"Q: All right, Now I want to ask you about guys. All right. When you say you talked about guys, what do you mean?"

"Q: And in the summer of 1997, was there a particular guy that she liked?"

"Q: Did you ever see [the defendant] and [the victim] together?"

We have read the testimony cited in the defendant's appendix and the testimony brought to our attention by the state. None of the witnesses described the details of the sexual activity between the defendant and the victim. Most witnesses merely testified that the victim told them that she was having sex with the defendant and told them in general terms when it took place. At the conclusion of the testimony of several constancy of accusation witnesses, the court instructed the jury regarding constancy of accusation evidence, particularly that it could not be used as evidence of the crimes with which the defendant was charged. We also note that the defendant himself elicited specific facts from the witnesses during his cross-examination of them. For those reasons, we conclude that the court did not abuse its discretion by admitting the constancy of accusation evidence of which the defendant complains.

## III

### ALLEGED PROSECUTORIAL MISCONDUCT

The defendant's last claim is that the prosecutor's final argument to the jury violated his constitutional rights and deprived him of a fair trial. The defendant failed to object to the closing argument of the prosecutor and seeks review under the plain error doctrine; Practice Book § 60-5;[14] or *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[15] We will review the

---

[14] Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

[15] Under *Golding*, a defendant can prevail on an unpreserved claim of constitutional error "only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

defendant's claim pursuant to *Golding* because the record is adequate for us to do so, and an allegation of prosecutorial misconduct in violation of a fundamental right is of constitutional magnitude. *State* v. *Jenkins*, 70 Conn. App. 515, 526, 800 A.2d 1200 (2002). On the basis of our review of the trial transcript and the briefs and arguments of the parties, we conclude, however, that the alleged constitutional violation did not clearly exist and did not clearly deprive the defendant of a fair trial, and, further that it is not one of those truly exceptional circumstances that warrant plain error review.[16]

"Prosecutorial misconduct can occur in the course of closing argument. . . . Our standard of review of a claim of prosecutorial misconduct that allegedly results in an unfair trial is well established. [T]o deprive a defendant of his constitutional right to a fair trial . . . the prosecutor's conduct must have so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct." (Internal quotation marks omitted.) Id., 526–27.

The essence of the defendant's claim is that the prosecutor improperly commented on the credibility of the witnesses and the inferences that could be drawn from

---

[16] "[T]o prevail under the plain error doctrine, the defendant must demonstrate that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice. . . . The doctrine is not implicated and review of the claimed error is not undertaken unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Hair*, 68 Conn. App. 695, 705, 792 A.2d 179, cert. denied, 260 Conn. 925, 797 A.2d 522 (2002).

their testimony. We agree with the defendant that in general, during closing arguments, a prosecutor may not express a personal opinion as to the credibility of witnesses. *State* v. *Williams*, 204 Conn. 523, 541, 529 A.2d 653 (1987). Where a prosecutor offers an opinion while recapitulating the evidence, however, our Supreme Court has held that such comments are improper, but do not constitute serious misconduct that affects the fairness of the trial. See *State* v. *Oehman*, 212 Conn. 325, 336, 562 A.2d 493 (1989). This court has held that it is not improper for a prosecutor to offer an opinion when commenting on evidence that supports the credibility of a witness. See *State* v. *Saez*, 60 Conn. App. 264, 268, 758 A.2d 894, cert. denied, 255 Conn. 905, 762 A.2d 912 (2000). A prosecutor may contend that testimony is truthful because it is "corroborated by the other evidence in the case." *State* v. *James*, 211 Conn. 555, 590, 560 A.2d 426 (1989). Furthermore, a prosecutor may properly comment on the credibility of a witness where "the comment reflects reasonable inferences from the evidence adduced at trial." *Jenkins* v. *Commissioner of Correction*, 52 Conn. App. 385, 401, 726 A.2d 657, cert. denied, 249 Conn. 920, 733 A.2d 233 (1999).

"[I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . [W]e must review the comments complained of in the context of the entire trial." (Internal quotation marks omitted.) *State* v. *Abdalaziz*, 45 Conn. App. 591, 605, 696 A.2d 1310 (1997), aff'd, 248 Conn. 430, 729 A.2d 725 (1999). "The mere use of phrases such as 'I submit,' 'I find,' or 'I believe' does not constitute improper argument." *Jenkins* v. *Commissioner of Correction*, supra, 52 Conn. App. 400. A prosecutor may discuss whether

witnesses have rehearsed their testimony; see *State* v. *Burton*, 258 Conn. 153, 169, 778 A.2d 955 (2001); *State* v. *James*, supra, 211 Conn. 589–90; and bring to the jury's attention the testimony of those witnesses who have an interest in the outcome of the trial. See *State* v. *Jefferson*, 67 Conn. App. 249, 272–73, 786 A.2d 1189 (2001), cert. denied, 259 Conn. 918, 791 A.2d 566 (2002).

We have reviewed the transcript of the prosecutor's closing argument and are mindful of the parameters that guide our determination of whether a prosecutor's comments were so egregious as to have violated the defendant's constitutional rights to a fair trial. We conclude that the prosecutor's comments here fell within those boundaries and that the defendant was not denied a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.