STATE OF CONNECTICUT *v.* DAVID B. TERWILLIGER
(AC 27106)

Flynn, C. J., and Lavine and Foti, Js.

---

Argued October 10, 2007—officially released January 8, 2008

*Donald D. Dakers*, special public defender, for the appellant (defendant).

*James M. Ralls*, senior assistant state's attorney, with whom, on the brief, were *Patricia M. Froehlich*, state's

attorney, and *Mark A. Stabile*, assistant state's attorney, for the appellee (state).

LAVINE, J. The defendant, David B. Terwilliger, was found guilty by a jury of manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a (a). He claims on appeal that he was deprived of his right to a fair trial because the trial court (1) failed to instruct the jury that the general charge on self-defense applied to the lesser included charges against him, (2) minimized his defense of premises defense by wrongly characterizing it as (a) a form of self-defense and (b) a defense allowing only the use of reasonable force, and (3) failed to instruct the jury that the state was required to disprove the defense of premises claim beyond a reasonable doubt. We disagree with the defendant's first two claims but agree with the third. Accordingly, we reverse the judgment of the trial court and remand the matter for a new trial. Because issues relating to the defendant's first and second claims are likely to arise on retrial, we address those claims as well.

Despite conflicting testimony, the jury reasonably could have found the following facts. On January 5, 2003, at about 8:30 or 9 p.m., Donald Kennedy arrived at 14 Vandall Street in Thompson, the home of his mother-in-law, Beverly Daniels, and her husband, the defendant, a sixty-three year old former member of the United States Marine Corps with naval law enforcement experience. Kennedy was married to Daniels' daughter, Christine, with whom he had two daughters, Kathryn and Shauna, and a son, James. Kathryn and her four year old daughter, Taylan, lived with Daniels and the defendant. Kennedy previously had lived in the basement at 14 Vandall Street but had moved out about three weeks earlier in December, 2002.

After Kennedy parked his car in the driveway, he was approached by Ben Monahan, a neighbor. Kennedy exclaimed to Monahan, "I'm drunk and I'm pissed." When Steve Gardner, another neighbor, appeared, Kennedy, upset over a fight that Gardner had had earlier with Kennedy's son, James, grabbed Gardner by the shirt, pushed him against the car and yelled, "Get the fuck out of here. You hit my son, I'll kill you." From inside the house, Daniels and the defendant overheard the commotion. Kathryn Kennedy went outside and asked her father to stop. Daniels asked the defendant to go outside to thwart further violence.

The defendant armed himself. He testified that he also was carrying a cellular telephone and that on his way out of the house, he told his wife to call the police. The defendant believed that Kennedy had an "explosive temper" and was like a "Jekyll and Hyde." He testified that Kennedy had attacked and threatened to kill him previously and that Kennedy habitually carried a "thumb release" knife in his back pocket.

After exiting the house, the defendant approached Kennedy, told him, "I don't want no fucking trouble out here," and twice asked Kennedy to leave. According to the defendant, Kennedy pushed him two or three times, accused him of beating up Kennedy's son, James, and then "said something about I'm going to kill you." The defendant kicked Kennedy in the groin. The defendant testified that Kennedy then stated: " 'That didn't hurt,' or words to that effect. It didn't do anything to him."

According to the defendant's testimony, after Kennedy threatened to kill him, the defendant took his revolver out, warned Kennedy that he would shoot him if he had to, ordered Kennedy off his property and told Kennedy that he was going to call the police. The defendant testified that he subsequently was unable to get away from Kennedy, who blocked him when he

attempted to call the police. Kennedy, according to the defendant, "got smack right in my face," and stated, "Now, I'm going to kill you and the mother of the beast. You don't have the balls to stop me, do you?" Because the defendant recalled hearing Kennedy refer to his wife, Christine Kennedy, as "the beast," the defendant became concerned that Kennedy might harm Christine, Daniels, and Kennedy's granddaughter.

At trial, the defendant explained, "And if he killed [me], he could kill her and kill them, too. That's what I had on my mind." Kennedy then "lunged down" and "scared the hell out of" the defendant, who testified that Kennedy's hand was "coming for my throat." The defendant shot Kennedy once in the lower chest. Daniels called 911.

After the shooting, the defendant walked away from where Kennedy lay and to the driveway of Frank Langlois, a neighbor. Seeing a gun sticking out of the defendant's pocket, Langlois told the defendant he needed to take the gun from him. The defendant refused to give up the gun. After Langlois enlisted the help of another neighbor, Kevin McDonald, the defendant took off his jacket with the gun inside it and gave it to McDonald. Soon after, Trooper Leonard Blanchette of the state police arrived on the scene and encountered Langlois, McDonald and the defendant. Langlois informed Blanchette that the defendant was involved in a shooting, and the defendant told Blanchette that he would not give him a hard time. Blanchette arrested the defendant. Medical personnel who arrived on the scene found Kennedy dead with a pocket knife in one of his pockets. The autopsy report would later reveal that at the time of Kennedy's death, his blood alcohol level was 0.15 percent.

The state charged the defendant with murder with a firearm in violation of General Statutes §§ 53a-54a[1] and 53-202k.[2] The defendant was found guilty by the jury of the lesser included offense[3] of manslaughter in the first degree with a firearm in violation of § 53a-55a (a).[4] On appeal, the defendant asserts that it was reasonably possible that the jury was misled by the court's instructions on (1) the applicability of his self-defense and defense of premises claims as to the lesser included offenses, (2) the applicable use of force in the defense of premises defense and (3) the state's obligation to disprove the defenses beyond a reasonable doubt.

I

The defendant first claims that the court failed to instruct the jury that the general charge on self-defense applied to the lesser included offenses.[5] Specifically,

---

[1] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . ."

[2] General Statutes § 53-202k provides in relevant part: "Any person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses any firearm, as defined in section 53a-3, shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony."

[3] The lesser offenses included within the crime of murder, of which the defendant could have been found guilty, were manslaughter in the first degree with a firearm, manslaughter in the second degree with a firearm and criminally negligent homicide.

[4] General Statutes § 53a-55a (a) provides in relevant part: "A person is guilty of manslaughter in the first degree with a firearm when he commits manslaughter in the first degree as provided in section 53a-55, and in the commission of such offense he uses . . . a pistol, revolver, shotgun, machine gun, rifle or other firearm. . . ."

[5] We reject the state's argument that no instructions on self-defense or defense of premises were warranted. Though the defendant bears the initial burden of producing sufficient evidence to raise the issue of self-defense, this burden is slight. The court should view the evidence most favorably to the defendant and should give the charge if the evidence is sufficient, if credited by the jury, to raise a reasonable doubt in the mind of a rational juror as to whether the defendant acted in self-defense. The burden may

the defendant alleges that the court failed to inform the jury that if it found that the defense of self-defense had not been disproved beyond a reasonable doubt, it should not consider the lesser included offenses of manslaughter in the first or second degree. We disagree.

The defendant did not preserve his claim but seeks review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). The defendant can prevail on his unpreserved claim only if the following four conditions are met: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id., 239–40. "The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review." (Internal quotation marks omitted.) *State* v. *Iassogna*, 95 Conn. App. 780, 787, 898 A.2d 237 (2006).

"[A] fundamental element of due process is the right of a defendant charged with a crime to establish a defense." (Internal quotation marks omitted.) *State* v. *DeJesus*, 194 Conn. 376, 388, 481 A.2d 1277 (1984). "This fundamental constitutional right includes proper jury instructions on the elements of self defense so that the jury may ascertain whether the state has met its burden

be satisfied if there is any foundation in the evidence for the defendant's claim. See *State* v. *Lewis*, 245 Conn. 779, 810, 717 A.2d 1140 (1998). "A defendant who asserts a self-defense claim for which there is evidence produced at trial to justify the instruction is entitled to a self-defense instruction, no matter how weak or incredible the claim." *State* v. *Solomon*, 103 Conn. App. 530, 535, 930 A.2d 716 (2007). In this case, the defendant met his burden of producing evidence at trial that he acted in self-defense or in defense of premises.

of proving beyond a reasonable doubt that the assault was not justified." Id. "An improper instruction on a defense . . . is of constitutional dimension. . . . [T]he standard of review to be applied to the defendant's constitutional claim is whether it is reasonably possible that the jury was misled. . . . In determining whether it was indeed reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State* v. *Skelly*, 78 Conn. App. 513, 515, 827 A.2d 759, cert. denied, 266 Conn. 910, 832 A.2d 74 (2003).

Despite the fact that defense counsel did not object at trial to the alleged instructional impropriety, we will review the defendant's claim because the record is adequate for review, and the right to establish a defense is constitutional in nature. Although we review this claim under the third prong of *Golding*, "we note that [w]hen the principal participant in the trial whose function it is to protect the rights of his client does not deem an issue harmful enough to press in the trial court, the appellate claim that the same issue clearly deprived the defendant of a fundamental constitutional right and a fair trial . . . is seriously undercut." (Internal quotation marks omitted.) Id., 515–16.

We find the defendant's allegation that the court failed to instruct the jury that the charge on self-defense applied to the lesser included offenses to be without merit. The court's instructions included the following:

"Remember . . . that the burden remains on the state to disprove the defense of self-defense beyond a reasonable doubt. . . . In summary, you have heard all of the evidence in this case with reference to the defendant's claim of self-defense of the person. The state must disprove this defense beyond a reasonable doubt. *If it has not, you must find the defendant not guilty.*" (Emphasis added.)

After explaining the elements of the lesser included offense of manslaughter in the first degree with a firearm, the court ordered the jury to refer to its previous instruction on self-defense: "[I]f you find the defendant not guilty of the crime of murder under this count, you shall then consider the lesser offenses of manslaughter in the first degree with a firearm. . . . For you to find the defendant guilty of this charge, the state must prove the following elements beyond a reasonable doubt: first, that the defendant caused the death of Donald Kennedy, and the next element is that the defendant intended to cause serious physical injury to Donald Kennedy. . . . *Again, you must refer to my previous instruction on intent and my previous instruction on self-defense.*" (Emphasis added.)

By directing the jury to refer to the previous instruction on self-defense when considering manslaughter in the first degree with a firearm, the court informed the jury that it must find the defendant not guilty of manslaughter in the first degree with a firearm if the state failed to disprove the defendant's self-defense theory beyond a reasonable doubt. Contrary to the defendant's claim, it is not reasonably possible that the jury was misled by these instructions. The defendant's first claim fails under the third prong of *Golding* because no constitutional violation clearly exists.[6]

---

[6] Though the court did not instruct the jury that it must find the defendant not guilty of the remaining lesser included offenses of manslaughter in the second degree with a firearm and criminally negligent homicide, we conclude, in light of the jury's verdict, that any failure to do so was harmless.

## II

The defendant next claims that the court minimized his defense of premises defense by characterizing it as (1) a form of self-defense and (2) a defense allowing only the use of reasonable force. We are not persuaded.

The court's charge on defense of premises included the following: "The second self-defense raised by the defendant is the self-defense in the defense of premises. . . . [T]he defense of premises against a criminal trespasser allows only the use of reasonable force. The test of the degree of force is both a subjective and an objective one. You must first view the situation from the perspective of the defendant. That is, whether the defendant believed that reasonable force was necessary, and you must then determine whether the belief was reasonable under the circumstances. Deadly force may be used only in three specific circumstances: in defense of a person threatened by deadly force or serious bodily injury by the criminal trespasser; two, in order to prevent an attempt by the trespasser to commit any other crime of violence; and three, when a person properly on the premises reasonably believes that deadly force is necessary to prevent or end a forcible, unlawful entry into his dwelling."

Because the record is adequate for review, and the right to establish a defense is constitutional in nature, we review the defendant's unpreserved claim of instructional error under the third prong of *Golding*, applying the same standard of review that we applied to the claim in part I. Addressing in turn the defendant's allegations that the court minimized his defense of premises defense by characterizing it as a form of self-defense and by stating that it justified only the use of reasonable force, we ask whether, in light of the overall charge, "it is reasonably possible that the jury was misled." (Internal quotation marks omitted.) *State* v. *Montanez*,

71 Conn. App. 246, 262, 801 A.2d 868, cert. denied, 261 Conn. 935, 806 A.2d 1069 (2002).

A

The defendant claims that the court minimized his defense of premises theory by characterizing it as a form of self-defense. Specifically, the defendant alleges that by describing defense of premises as a form of self-defense, the court reduced the defense of premises to an adjunct of self-defense.

General Statutes § 53a-20 provides: "A person in possession or control of premises, or a person who is licensed or privileged to be in or upon such premises, is justified in using reasonable physical force upon another person when and to the extent that he reasonably believes such to be necessary to prevent or terminate the commission or attempted commission of a criminal trespass by such other person in or upon such premises; but he may use deadly physical force under such circumstances only (1) in defense of a person as prescribed in section 53a-19, (2) when he reasonably believes such to be necessary to prevent an attempt by the trespasser to commit arson or any crime of violence, or (3) to the extent that he reasonably believes such to be necessary to prevent or terminate an unlawful entry by force into his dwelling as defined in section 53a-100, or place of work, and for the sole purpose of such prevention or termination."

The court made the following misstatements to the jury: "[T]hat is . . . all of the *self*-defense charges that have been raised by the issues presented in this case," and "[t]he second *self*-defense raised by the defendant is the *self*-defense in the defense of premises." (Emphasis added.) Our review of the complete charge, however, reveals that despite some superfluous nomenclature, the instructions properly articulated the specific elements of defense of premises, including that the right

to defend premises may be invoked only by persons in possession or control of the premises and only against criminal trespassers.[7] Additionally, the court emphasized the three circumstances in which deadly force is allowable under a defense of premises theory. See *State v. Pearsall*, 44 Conn. App. 62, 69, 687 A.2d 1301, cert. denied, 240 Conn. 910, 689 A.2d 473 (1997).

"We have recognized that when a court gives a lengthy jury instruction, a slip of the tongue may occasionally occur." *State v. Jarrett*, 82 Conn. App. 489, 497,

---

[7] The court's entire defense of premises charge was the following: "[T]he [s]econd self-defense raised by the defendant is the self-defense in the defense of premises. In certain circumstances, our law justifies the use of physical force against another for the protection of premises. The term 'premises' is generally defined as any real estate or building or any structure used for lodging persons overnight or for carrying on business therein. Where a building consists of separate units, such as apartments or offices, any unit not occupied by the actor is a separate building or premise. The right to defend premises does not apply to everyone, but only to persons in possession or control of such premises, or persons privileged to be there, such as visitors or guests of the owner. The right to defend premises does not allow the use of force every time someone enters those premises without consent.

"For example, force may not be used against someone who enters your property merely by accident or mistake. Rather, force may be used only to prevent an actual or attempted criminal trespass. This occurs when a person enters or remains on the premises without permission and refuses to leave after requested to do so. The defense of premises against a criminal trespasser allows only for the use of reasonable force. I will repeat that: the defense of premises, unlike the defense of a person—the defense of premises against a criminal trespasser allows only the use of reasonable force. The test of the degree of force is both a subjective and objective one. You must first view the situation from the perspective of the defendant. That is, whether the defendant believed that reasonable force was necessary, and you must then determine whether the belief was reasonable under the circumstances.

"Deadly force may be used in only three specific circumstances: in defense of a person threatened by deadly force or serious bodily injury by the criminal trespasser; two, in order to prevent an attempt by the trespasser to commit any other crime of violence; and three, when a person properly on the premises reasonably believes that deadly force is necessary to prevent or end a forcible unlawful entry into his dwelling. I'm going to read those three specific instructions again: deadly force in defense of premises may be used in only three specific circumstances. In the defense of a person

845 A.2d 476, cert. denied, 269 Conn. 911, 852 A.2d 741 (2004). "We have held that an inadvertent slip of the tongue in summarizing jury instructions does not mean that a defendant was deprived of his right to a fair trial when the record reveals that the court properly instructed the jury on the elements of the crime." *State* v. *Mahon*, 97 Conn. App. 503, 519, 905 A.2d 678, cert. denied, 280 Conn. 930, 909 A.2d 958 (2006). We view the court's reference to "self-defense of premises" as a slip of the tongue or, alternatively, as a relatively inconsequential misstatement. We conclude that it is not reasonably possible that the jury was misled by the court's misstatements.

B

The defendant claims that the court minimized his defense of premises theory when it stated that defense of premises justifies only the use of reasonable force. More particularly, the defendant alleges that the court failed to instruct the jury that the test of what constitutes reasonable force must include the defendant's subjective understanding.

General Statutes § 53a-20 provides in relevant part: "A person in possession or control of premises, or a person who is licensed or privileged to be in or upon such premises, is justified in using reasonable physical force upon another person when and to the extent that he reasonably believes such to be necessary to prevent or terminate the commission or attempted commission of a criminal trespass by such other person in or upon such premises . . . ."

The court in this case charged that "the defense of premises, unlike the defense of a person . . . against

threatened by deadly force or serious bodily injury by a criminal trespasser; two, in order to prevent an attempt by the trespasser to commit any other crime of violence; and three, when a person properly on the premises reasonably believes that deadly force is necessary to prevent or end forcible, unlawful entry into the dwelling."

a criminal trespasser allows only the use of reasonable force. The test of the degree of force is both a subjective and objective one. You must first view the situation from the perspective of the defendant. That is, whether the defendant believed that reasonable force was necessary, and you must then determine whether the belief was reasonable under the circumstances."

Mindful that instructions are not to be judged in artificial isolation from the overall charge, we find that the court's instruction that what is reasonable force must be determined both subjectively and objectively properly clarified the meaning of "reasonable" for the jury. See *State* v. *Skelly*, supra, 78 Conn. App. 515. The court's instructions clearly required the jury to consider the defendant's point of view. From the charge, the jury could understand that the defendant had the right to repel a forcible entry into his dwelling even with deadly force under certain circumstances. See *State* v. *Amado*, 254 Conn. 184, 196, 756 A.2d 274 (2000). Although the challenged instruction could be construed in isolation as dictating a solely objective standard regarding reasonable force, our review of the charge, as a whole, persuades us that the trial court sufficiently instructed the jury to consider what the defendant believed under the circumstances. See *State* v. *Amado*, 50 Conn. App. 607, 622, 719 A.2d 45 (1998), rev'd in part on other grounds, 254 Conn. 184, 756 A.2d 274 (2000).[8]

We are satisfied that it is not reasonably possible that the jury was misled by the court's instructions on the

---

[8] *State* v. *Ash*, 231 Conn. 484, 651 A.2d 247 (1994), is distinguishable from the case at bar. In *Ash*, the trial court misstated the law "when it instructed the jury to consider 'what was reasonable for the defendant to perceive' . . . and to view the defendant's actions 'as you would perceive a reasonable person to view the same situation, under the same conditions.' " Id., 494–95. Our Supreme Court held that these words incorrectly suggested that the statute permitted the jury to measure the defendant's knowledge according to an objective standard rather than the subjective standard of the defendant's actual knowledge. Id., 495.

use of force in defense of premises. The defendant's second claim thus fails under the third prong of *Golding*.

## III

The defendant finally claims that the court's failure to instruct the jury that it was the state's burden to disprove his defense of premises theory beyond a reasonable doubt violated his due process rights. Specifically, the defendant argues that the court should have informed the jury that it was required to find him not guilty if it found that the state failed to disprove the claimed defense of premises. We agree with the defendant. Accordingly, we reverse the judgment of the trial court.

The defendant asserts that his claim was preserved by his request to charge. "A party may preserve for appeal a claim that a jury instruction was improper either by submitting a written request to charge or by taking an exception to the charge as given. Practice Book § 16-20. If counsel follows the latter course, he or she must state distinctly the matter objected to and the ground of the objection. . . . The purpose of the rule is to alert the court to any claims of error while there is still an opportunity for correction in order to avoid the economic waste and increased court congestion caused by unnecessary retrials." (Citations omitted; internal quotation marks omitted.) *State* v. *Pereira*, 72 Conn. App. 107, 112–13, 806 A.2d 51 (2002), cert. denied, 262 Conn. 931, 815 A.2d 135 (2003).

The defendant's request to charge in this case does not address the issue he now claims was omitted erroneously from the jury charge.[9] The only language in the

[9] The defendant's request to charge on the defense of premises was the following: "Now, I will instruct you on the . . . defense of [d]efense of [p]remises. In certain circumstances, our law justifies the use of physical force against another for the protection of premises. The term 'premises' is generally defined as any real estate or building or any structure or vehicle or watercraft used for lodging persons overnight or for carrying on business

defendant's request to charge that is not in the jury charge that the court gave is the following: "The [d]efendant has presented evidence that the deceased was not lawfully on the property and that he was a trespasser. The [d]efendant has presented evidence that the deceased threatened to enter the home of the [d]efendant [and] kill or cause great bodily harm to the [d]efendant's family."

In *Pereira*, this court held that a party claiming instructional error on the basis of language missing from its requested charge could not claim that the issue was preserved. *State* v. *Pereira*, supra, 72 Conn. App. 116. Similarly, in *State* v. *Martin V.*, 102 Conn. App. 381, 926 A.2d 49, cert. denied, 284 Conn. 911, 931 A.2d 933 (2007), because the defendant failed to object to the instructions or to file a request to charge on the

---

therein. Where a building consist[s] of separate units, such as apartments or offices, any unit not occupied by the actor is a separate building or premises. The right to defend premises does not apply to everyone, but only to persons in possession or control of such premises, or persons privileged to be there, such as [visitors] or guests of the owner. The right to defend premises does not allow the use of force every time someone enters those premises without consent. For example, force may not be used against someone who enters your property merely by accident or mistake. Rather, force may be used only to prevent an actual or attempted criminal trespass. This occurs when a person enters or remains on the premises without permission, and refuses to leave after [being] requested to do so.

"The defense of premises against a criminal trespasser allows only the use of reasonable force. The test of the degree of force is both a subjective and an objective one. You must first view the situation from the perspective of the defendant; that is, whether the defendant believed that reasonable force was necessary. You must then determine whether the belief was reasonable under the circumstances. Deadly force may be used in only three specific circumstances . . . (1) in defense of a person threatened by deadly force or serious bodily injury by the criminal trespasser; (2) in order to prevent an attempt by the trespasser to commit any other crime of violence; and (3) when a person properly on the premises reasonably believes that deadly force is necessary to prevent or end a forcible unlawful entry into his dwelling. The [d]efendant has presented evidence that the deceased was not lawfully on the property and that he was a trespasser. The [d]efendant has presented evidence that the deceased threatened to enter the home of the [d]efendant [to] kill or cause great bodily harm to the [d]efendant's family."

issue raised on appeal, we concluded that the claim was unpreserved. Id., 391 n.10. Finding that the court in this case charged the jury in accordance with the defendant's request to charge and noting that the defendant failed to object to the jury charge, we conclude that the defendant did not preserve this issue for appellate review.

Because the record is adequate for review and because the right to establish a defense is constitutional in nature, however, we will review the defendant's claim under *Golding*, reiterating that "[a] fundamental element of due process is the right of a defendant charged with a crime to establish a defense." (Internal quotation marks omitted.) *State* v. *DeJesus*, supra, 194 Conn. 388. "This fundamental constitutional right includes proper jury instructions on the elements of self defense so that the jury may ascertain whether the state has met its burden of proving beyond a reasonable doubt that the assault was not justified." Id.

"Our inquiry into whether the court's instruction sufficiently guided the jury to a proper verdict necessarily asks whether due process considerations required the court to instruct the jury, as the defendant suggests, that it was bound to find the defendant not guilty if it found that the state had failed to disprove the claimed defense . . . ." *State* v. *Montanez*, supra, 71 Conn. App. 253. We conclude that the court was so required and that the charge failed to convey that information to the jury.

"[A] legally adequate instruction as to the defense should convey that the effect of a finding that the state has failed to disprove the defense requires the jury to render a verdict in the defendant's favor. *The court must unambiguously instruct the jury that it must find the defendant not guilty if it finds that the state has not disproved the defense.*" (Emphasis added.) Id.

"A proper self-defense instruction must inform the jury that the defense not only justifies conduct that would otherwise be criminal in nature, but that it is a complete defense in a criminal proceeding." Id., 255.

A fair reading of the court's instructions in this case leaves it unclear at best as to the consequence of a finding that the state failed to disprove the claimed defense of premises. See id. Although the court explained the three situations in which deadly force is justified under the defense of premises theory and separately defined the state's burden of proof beyond a reasonable doubt, the court did not inform the jury of the consequence of finding that the state failed to disprove the defendant's defense of premises defense. On self-defense, the court instructed the jury that "[t]he state must disprove this defense beyond a reasonable doubt. If it has not, you must find the defendant not guilty." There is no analogous statement as to defense of premises. Additionally, the court instructed the jury to "refer to my previous instruction on intent and my previous instruction on self-defense" when considering the lesser included offense of manslaughter in the first degree with a firearm. Again, there is no analogous reference to earlier instructions in the court's defense of premises instructions.

Although we recognize that *Montanez* is factually distinguishable, in that the focus of that case was the court's failure to charge on the effect of a finding that the state failed to disprove the defense of self-defense, we can discern no reason why the rationale underlying the reversal in that case should not apply here. We reject the state's argument that the court's instructions on self-defense, in combination with the court's characterization of defense of premises as a form of self-defense, made clear to the jury that it must return a verdict of not guilty if the state failed to disprove the

defense of premises defense. Though they share similarities, self-defense and defense of premises are distinct statutory defenses. Conflating them is problematic, especially in this case, where the evidence brought § 53a-20 directly into play. Each defense warrants complete and constitutionally adequate instructions defining the legal consequences of the jury's finding that the state failed to disprove the defense.

After careful review of the charge in its entirety, we conclude that it is reasonably possible that the jury was misled by the court's instruction on defense of premises. Consequently, we reverse the judgment of conviction.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.