STATE OF CONNECTICUT *v.* COURTNEY BRYAN
(AC 31654)

Lavine, Robinson and Flynn, Js.

Argued November 29, 2010—officially released February 15, 2011

*Glenn W. Falk*, special public defender, with whom, on the brief, was *Jennifer Rae Taylor*, law student intern, for the appellant (defendant).

*Sarah Hanna*, assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Paul N. Rotiroti*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Courtney Bryan, appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 and 53a-59 (a) (1). The court merged both convictions as counseled by the rule of *State* v. *Chicano*, 216 Conn. 699, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991),

and sentenced the defendant to six years imprisonment. On appeal, the defendant claims that the trial court erred in failing to instruct the jury on defense of others under General Statutes (Rev. to 2007) § 53a-19[1] in accordance with a written request to charge. We agree that the court improperly refused to charge on that defense and, accordingly, reverse the judgment and remand the case for a new trial.

The following evidence that the jury heard is pertinent. Abdelmoutalib Sofiane, the person who the jury found had been assaulted, and Farrah Lawrence had formerly dated for approximately two years after which

[1] Self-defense is defined in General Statutes (Rev. to 2007) § 53a-19 and provides: "(a) Except as provided in subsections (b) and (c) of this section, a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

"(b) Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using deadly physical force upon another person if he or she knows that he or she can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he or she is in his or her dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor, or if he or she is a peace officer or a special policeman appointed under section 29-18b or a private person assisting such peace officer or special policeman at his or her direction, and acting pursuant to section 53a-22, or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a demand that he or she abstain from performing an act which he or she is not obliged to perform.

"(c) Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force, or (3) the physical force involved was the product of a combat by agreement not specifically authorized by law."

Lawrence refused to see Sofiane any further. The defendant was the longtime friend and current boyfriend of Lawrence on March 1, 2007.

Here, some of the previous violent action between Sofiane directed at both Lawrence and the defendant after Lawrence's breakup with Sofiane becomes pertinent. Lawrence testified that she ended the dating relationship with Sofiane after Sofiane became threatening and abusive. After coming to her apartment uninvited, he smashed a television set, broke a telephone and pushed her. The defendant was made aware of this incident immediately afterwards by telephone call from Lawrence. Sofiane arrived at Lawrence's home again, shouting at her and stabbing himself. Again, Lawrence made known this incident to the defendant. On another occasion, Sofiane tried to run the car in which Lawrence and the defendant were riding off the road, yelling at them and spitting at their car. As they proceeded farther down the road, Sofiane blocked their path with his vehicle and shouted that he was going to "f— [them] up," which resulted in a complaint against Sofiane being made to the police. According to Lawrence, a couple of weeks after the road incident, after being refused admittance to Lawrence's home, Sofiane tried to head butt a glass door to gain entry, but when that did not succeed, he proceeded to break Lawrence's bedroom window with his fist and invaded Lawrence's home causing Lawrence to run out the front door and the police to come to the scene. Again, Lawrence made known this occurrence to the defendant. In a later incident, Sofiane threatened to kill Lawrence. Specifically, he said that if she got him into trouble "so he couldn't get his citizenship, he would kill [her] and run back to Morocco."

It was against this evidentiary backdrop of violence, threats and abuse attributed to Sofiane that the record testimony of the defendant must be viewed as he saw

Sofiane enter the parking lot of Lincoln Technical Institute (Lincoln) on March 1, 2007. On that day, Lawrence and the defendant traveled to Lincoln where Lawrence was enrolled as a student. The defendant stayed in the automobile. Sofiane then drove into the same parking lot, parking his vehicle near Lawrence's car. Sofiane then drove away but returned about five minutes later. According to the defendant, Sofiane approached the car, lifted his shirt and revealed a firearm and made threats as to both the defendant and Lawrence. He called Lawrence a "bitch" and said he was going to "get her." The defendant also testified that when Sofiane returned, Sofiane opened the door of the automobile in which the defendant sat and said he was going into the school building to kill Lawrence. As Sofiane walked toward the school and entered the building, the defendant claimed to have followed him and encountered Sofiane coming back out of the door. The defendant also testified that Sofiane spit in his face and grabbed him around the neck while at the same time, "he went for his waistband" where he previously had displayed a gun. The two men then grappled, and, in the defendant's version of events, Sofiane was stabbed with a knife that the defendant had removed from the glove compartment of Lawrence's vehicle. The defendant testified that the stabbing was accidental, but he also testified that he was acting in defense of himself and of Lawrence. The defendant first testified that he did not think he had to stab Sofiane but then said he did so in defense of himself and later said also that he did so in defense of Lawrence because he was afraid of what Sofiane might do to Lawrence and him.

The following aspect of the procedural history is relevant. Citing this court's decision in *State* v. *Darrow*, 107 Conn. App. 144, 944 A.2d 984 (2008), and *State* v. *Miller*, 55 Conn. App. 298, 739 A.2d 1264 (1999), cert.

denied, 252 Conn. 923, 747 A.2d 519 (2000), the defendant claimed entitlement to this defense of others instruction even when the defenses raised might be inconsistent and requested an instruction pursuant to § 2.8-1 of the criminal jury instructions published by the judicial branch.[2] The trial court did not instruct the jury on the defense of others defense requested. On appeal, neither the defendant nor the state claims that the request was waived. The defendant argues that the court's refusal to give the requested instruction was improper and asks that the judgment of conviction be reversed and that the matter be remanded for a new trial. In response, the state argues that the evidence did not support a defense of others instruction because no rational juror could have found that the defendant acted in defense of Lawrence and that any error in failing to give the requested instruction was harmless.

In reviewing entitlement to a jury instruction on self-defense, defense of others or defense of premises, the reviewing court must view the evidence in the light most favorable to the defendant requesting the charge. *State* v. *Terwilliger*, 105 Conn. App. 219, 224 n.5, 937 A.2d 735 (2008), aff'd, 294 Conn. 399, 984 A.2d 721 (2009).

The defendant's principal claim on appeal is that the trial court erred in failing to instruct the jury on the defense of others under General Statutes (Rev. to 2007)

---

[2] The defendant's request to charge on the defense of others was as follows: "The defendant requests the instructions pursuant to Section 2.8-1 of the approved instructions of the Connecticut Judicial Branch. *State* v. *Darrow*, [supra, 107 Conn. App. 144]. See also *State* v. *Miller*, [supra, 55 Conn. App. 298] (stating that the defendant is permitted to raise inconsistent defenses). Evidence to which the instruction applies: The defendant presented evidence of prior threatening conduct by the complainant against the defendant's girlfriend. Further, the defendant presented evidence of conduct by the complainant on March 1, 2007 giving the defendant a reasonable belief that the complainant was about to inflict physical force against his girlfriend."

§ 53a-19 in accordance with his written request. Specifically, the defendant argues that on the basis of the evidence presented, viewed in the light most favorable to the defendant, a jury reasonably could have found that the defendant was protecting Lawrence when he stabbed Sofiane. In response, the state argues that there is no rational view of the evidence to show that the defendant actually believed that Sofiane was about to use force on Lawrence or that any such belief reasonably would warrant such an instruction. Particularly, the state argues that the defendant's belief that Lawrence was in danger became unreasonable when the defendant viewed Sofiane leaving the building. We agree with the defendant.

The legal principles that are applicable to the defendant's claim are well established. "[T]he fair opportunity to establish a defense is a fundamental element of due process of law . . . . This fundamental constitutional right includes proper jury instructions on the elements of self-defense so that the jury may ascertain whether the state has met its burden of proving beyond a reasonable doubt that the assault was not justified. . . . Thus, [i]f the defendant asserts [self-defense] and the evidence indicates the availability of that defense, such a charge is obligatory and the defendant is entitled, as a matter of law, to [an] . . . instruction [on self-defense]. . . . Before an instruction is warranted, however, [a] defendant bears the initial burden of producing sufficient evidence to inject self-defense into the case. . . . To meet that burden, the evidence adduced at trial, whether by the state or the defense, must be sufficient [if credited by the jury] to raise a reasonable doubt in the mind of a rational juror as to whether the defendant acted in self-defense. . . . This burden is slight, however, and may be satisfied if there is any foundation in the evidence [for the defendant's claim], no matter how weak or incredible . . . . Furthermore, in reviewing

the trial court's rejection of the defendant's request for a jury charge on self-defense, we must adopt the version of the facts most favorable to the defendant which the evidence would reasonably support." (Citations omitted; internal quotation marks omitted.) *State* v. *Lewis*, 245 Conn. 779, 810, 717 A.2d 1140 (1998); see also *State* v. *Terwilliger*, 294 Conn. 399, 411–12, 984 A.2d 721 (2009).

"The Connecticut test for the degree of force in self-defense is a subjective-objective one. The jury must view the situation from the perspective of the defendant. Section § 53a-19 (a) requires, however, that the defendant's belief ultimately must be found to be reasonable. . . . Moreover, the evidence must be such that the jury must not have to resort to speculation in order to find that the defendant acted in justifiable self-defense." (Citations omitted; internal quotation marks omitted.) *State* v. *Lewis*, supra, 245 Conn. 811.

"It is true that [i]f the defendant asserts a recognized legal defense and the evidence indicates the availability of that defense, such a charge is obligatory and the defendant is entitled, as a matter of law, to a theory of defense instruction. . . . *State* v. *Cruz*, 75 Conn. App. 500, 510, 816 A.2d 683 (2003), aff'd, 269 Conn. 97, 848 A.2d 445 (2004). . . . A defendant's initial burden is slight, for he has no burden of persuasion; he merely has to introduce sufficient evidence to warrant presenting his claim of self-defense to the jury. *State* v. *Ramos*, 271 Conn. 785, 800, 860 A.2d 249 (2004); *State* v. *Singleton*, 97 Conn. App. 679, 691, 905 A.2d 725, cert. granted on other grounds, 280 Conn. 949, 912 A.2d 484 (2006). Thus, [a] court should view the evidence most favorably to the defendant and should give the charge if the evidence is sufficient, if credited by the jury, to raise a reasonable doubt in the mind of a rational juror as to whether the defendant acted in self-defense. *State*

v. *Terwilliger*, [supra, 105 Conn. App. 224 n.5]." (Citations omitted; internal quotation marks omitted.) *State* v. *Darrow*, supra, 107 Conn. App. 147–48; see also *State* v. *Terwilliger*, supra, 294 Conn. 408.

We first address the defendant's argument that on the basis of the evidence viewed in the light most favorable to the defendant, a reasonable jury could have found that the defendant was protecting Lawrence when he stabbed Sofiane. Pursuant to § 53a-19, in order to raise a defense of others defense, the defendant was required to produce evidence that he reasonably believed that deadly physical force was necessary to prevent Sofiane from committing or attempting to commit a crime of violence against Lawrence. The standard set forth in *Lewis* governs our resolution of this issue. The defendant's "burden is slight, however, and may be satisfied if there is any foundation in the evidence [for the defendant's claim], no matter how weak or incredible . . . ." (Internal quotation marks omitted.) *State* v. *Lewis*, supra, 245 Conn. 810.[3] Here, the direct and circumstantial evidence presented by the defendant at trial was sufficient to support his request for a defense of others charge. The direct evidence presented by the defendant met the low threshold for giving the jury instruction. The defendant testified that he followed Sofiane, saw Sofiane entering the building and that Sofiane carried a firearm. He also testified that Sofiane threatened to kill Lawrence immediately before heading into the building and that he, in turn, followed Sofiane. Once the defendant testified that he believed

---

[3] At a charging conference, the court, and not the jury, has heard the request related to the evidence that was offered. Since the jury has heard the evidence relating to that request but made no findings prior to deliberation, the phrase "no matter how weak or incredible" must refer to a determination made by the court. Therefore, even if the court thinks the evidence is "incredible," the court is required to give the charge if there is some basis in the evidence, however weak or thin. See *State* v. *Lewis*, supra, 245 Conn. 810.

Sofiane was going after Lawrence inside the building, after Sofiane had threatened to kill her, it was up to the jury, not the court, to resolve the claim of defense of others as a possible justification for the assault. Additionally, there was ample circumstantial evidence to support the defendant's request. The lengthy history of the violent and abusive relationship between Sofiane and Lawrence, about which the defendant testified he was fully aware, was relevant to the defendant's request to charge. It was against this evidentiary backdrop of violence, threats and abuse attributed to Sofiane that the record testimony of the defendant must be viewed as he saw Sofiane enter the parking lot on March 1, 2007, and proceed toward the building after Sofiane had announced to the defendant that he was going to kill Lawrence.

In response to the defendant's defense of others claim, the state argues that no rational juror could conclude that the defendant still believed Lawrence was in danger because Sofiane was exiting the building when the altercation took place. In support, the state points to evidence that Sofiane turned around right at the doorway of the building when the defendant was following him inside. We can infer, and the state agreed at oral argument, that the entire incident occurred in a short period of time because the altercation occurred at the doorway of the premises. For the state's argument to prevail, however, Sofiane's action must be construed as Sofiane's abandonment of his purpose of entering the building to harm Lawrence. This construction puts the evidence in a light most favorable to the state and not to the defendant as our review standard requires. In light of the evidence that Sofiane threatened to kill Lawrence before heading into the building, the short time period in which the altercation took place, and the history of Sofiane's threatening and abusive behavior toward Lawrence, Sofiane's action of turning around

at the doorway does not mean that the only rational inference a jury could make was that Sofiane abandoned his purpose and that the imminent threat to Lawrence was neutralized. Viewing the facts most favorably to the defendant, as we must; id.; we conclude that a rational juror could conclude that the defendant still believed Lawrence was in danger.

The state further argues that because Lawrence was not physically present at the altercation, the threat to her was not imminent, and, therefore, a charge on the defense of others was not justified. Although Lawrence was out of sight at the moment the altercation took place, the defendant knew she was in the building, and Sofiane had just stated that he was going to kill her. Furthermore, Sofiane had demonstrated to the defendant that he had a weapon. On the basis of this testimony, history of abuse and threatening conduct by Sofiane toward Lawrence, we conclude that the defendant presented sufficient evidence to entitle him to the charge he requested and that this issue was wrongly removed from the jury's consideration.[4]

We next address the state's argument that the defendant's inconsistent testimony regarding whether he was in fear for himself or Lawrence at the time of the altercation obviates any construction of the facts that would support a defense of others instruction. In response, the defendant contends that evidence and inferences running counter to a defense do not render a defense unavailable. Particularly, the defendant argues that he testified that he acted in defense of himself as well as in fear of what Sofiane might do to Lawrence. We agree with the defendant.

---

[4] Although the jury rejected the defendant's defense of self-defense of person, namely, himself, this would not preclude the jury from consideration of the defense of others defense. Self-defense includes both defense of one's person and the defense of others. General Statutes (Rev. to 2007) § 53a-19; see *State* v. *Terwilliger*, supra, 105 Conn. App. 219.

At trial, the defendant testified that the stabbing was accidental but then testified that he was acting in defense of himself and Lawrence. He first stated that he did not think he had to stab Sofiane but then said he did so in defense of himself and later said he did so also in defense of Lawrence because he was afraid of what Sofiane might do to Lawrence and him. Because it was the function of the jury to believe or to disbelieve the defendant's testimony or any part of it, his assertions did not preclude a jury instruction on defense of others as provided by § 53a-19, the self-defense statute.[5] "The jury is free to juxtapose conflicting versions of events and to determine which is more credible. . . . [T]he [jury] can disbelieve any or all of the evidence . . . and can construe [the] evidence in a manner different from the parties' assertions." (Citations omitted; internal quotation marks omitted.) *State* v. *Person*, 236 Conn. 342, 347, 673 A.2d 463 (1996). Rather, a jury may be instructed on a requested defense theory, even if the defendant has testified inconsistently, if there is sufficient evidence to warrant the instruction. See *State* v. *Harris*, 46 Conn. App. 216, 236, 700 A.2d 1161 ("[a] defendant is entitled to have instructions presented relating to any theory of defense for which there is any foundation in the evidence, no matter how weak or incredible" [internal quotation marks omitted]), cert. denied, 243 Conn. 930, 701 A.2d 662 (1997).

---

[5] "Though the jury was presented with different versions of the events and multiple confessions, choosing among competing inferences and determining the credibility of the confessions are functions within its exclusive province. *State* v. *Iban C.*, 275 Conn. 624, 634, 881 A.2d 1005 (2005) (credibility determinations within exclusive province of jury); *State* v. *Mungroo*, 104 Conn. App. 668, 673, 935 A.2d 229 (2007) (choosing among competing inferences within exclusive province of jury), cert. denied, 285 Conn. 908, 942 A.2d 415 (2008); see also *State* v. *Martin*, 285 Conn. 135, 148, 939 A.2d 524 (2008) (jury permitted to consider any proven fact in combination with other proven facts and cumulative effect of all evidence presented)." *State* v. *Darrow*, supra, 107 Conn. App. 151–52.

We conclude that the defendant met his burden of providing an evidentiary foundation to inject the issue of defense of others into the case. We further conclude, therefore, that the court improperly refused to charge on the defense of others pursuant to General Statutes (Rev. to 2007) § 53a-19.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.