## STATE OF CONNECTICUT *v.* JARVIS BRYANT
## (15105)

PETERS, C. J., and CALLAHAN, BORDEN, BERDON and PALMER, Js.

Argued February 6—decision released May 9, 1995

*Todd D. Fernow*, with whom were *Thomas M. Nolan* and *Barbara N. Weady*, certified legal interns, and, on the brief, *Timothy H. Everett* and *David L. Polsky*, certified legal intern, for the appellant (defendant).

*Frederick W. Fawcett*, assistant state's attorney, with whom, on the brief, were *Donald A. Browne*, state's attorney, and *Stephen J. Sedensky III*, assistant state's attorney, for the appellee (state).

BORDEN, J. The defendant, Jarvis Bryant, appeals[1] from the judgment of conviction,[2] rendered after a jury trial, of murder in violation of General Statutes § 53a-54a (a). The defendant's sole claim on appeal is that the trial court improperly instructed the jury on the issue of self-defense.[3] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On June 7, 1991, the defendant shot Mervin Needham in Father Panik Village, a housing project in Bridgeport. Detective William Collette, responding to a citizen's report, arrived at the housing project and discovered Needham's body lying face down with blood

---

[1] The defendant appeals from the judgment of the trial court pursuant to General Statutes § 51-199 (b) (3).

[2] The defendant also was convicted of carrying a pistol without a permit in violation of General Statutes § 29-35. He does not appeal this conviction.

[3] Although the defendant did not take exception to the trial court's instruction, the defendant had submitted an appropriate written request to charge, and therefore his claim is preserved for appeal. See Practice Book § 315 ("[t]he supreme court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered"); see also *Grayson* v. *Wofsey, Rosen, Kweskin & Kuriansky*, 231 Conn. 168, 194 n.23, 646 A.2d 195 (1994).

surrounding his head. There were people around the body. Collette examined the body and discovered no vital signs.

Arkady Katsnelson, the state associate medical examiner, conducted an autopsy on Needham's body and determined that the sole cause of death was a .38 caliber gunshot wound to the back of the head fired from a distance of greater than three feet. Detective David S. Gibbs, a state department of public safety firearms expert, determined that the fatal bullet had been fired from either a .38 caliber or a .357 magnum revolver.

On June 10, 1991, the defendant, accompanied by family members and clergy, turned himself in to the police and voluntarily made a statement concerning his participation in the shooting of Needham. The relevant portion of the defendant's statement is as follows: "I got . . . up and I had to go downtown to get some clothes. I went to the store to get some change for the bus. I seen Mervis going into the store. He had threatened me in the past. He threatened a lot of people. I had to carry a gun because I was afraid that he was going to shoot me. I went into the store and I seen him. He looked at me and I looked back at him. He left and I stayed for a while. I could see through the glass that he was outside. I could see that he had his hand in the front of his pants. He was like looking around. I was worried and stuff. I went back out. He looked at me and started to reach and then he pulled the gun out. He clicked it but it didn't go off. He clicked towards me. Then I had a chance to get my gun out. I pulled mine out and he seen it. That's when he started running. I started shooting at him. I started backing up. I was thinking that he could fix his gun and start shooting at me. He ran across the street and that's when I fired one more time. That's when he fell. I left and went to my house."

The defendant also contended that Needham had engaged in a pattern of conduct in which he had twice attempted to rob the defendant at gunpoint, and had threatened the defendant's family. At trial, the defendant testified that during the second robbery attempt, Needham had told him that "[t]his time I'm going to let you go. Next time I see you I'm going to shoot you." The defendant testified that he had purchased his weapon six months prior to the attempted robberies, but did not begin carrying the weapon until after the second robbery attempt.

The defendant testified that he had fired his weapon at Needham five times, and that Needham had fallen on the fifth shot when he had been between 90 and 100 feet away. After Needham had fallen, the defendant fled the area. No weapon was discovered near the body.

Clarissa Crump, Needham's girlfriend, testified to the following. The evening prior to the shooting, Needham had stayed with her in her third floor apartment in Father Panik Village, around the corner from Harold's Market, near where the shooting took place. On the morning of the shooting, she had observed Needham dressing, and saw that he did not have a weapon. Further, she believed that his weapon had been stolen approximately one month earlier.

Crump testified further that she had sent Needham to the market to purchase milk, and, after he had left, she decided that she also wanted him to purchase cigarettes. She went to the window of her apartment in an effort to contact Needham and when she did so, she observed the defendant leaving his grandmother's apartment, heading toward Harold's Market. Crump testified that the defendant was carrying a small black gun. Crump left the window to get dressed. While she was dressing, she had heard gun shots. When she finished dressing, she went to see what had happened.

Crump further testified that Needham had told her that he had used a weapon to "stick up" the defendant on at least one occasion.

In light of the admission of the defendant that he had fired the fatal shot, the only remaining issue for the jury to determine was whether the defendant had been justified in his use of deadly force. The trial court instructed the jury with respect to self-defense as follows: "Now, the defense is one of self-defense, and that is a statutorily defined defense, *which the State has the burden of disproving in your minds from the overview of the evidence you've heard in this case.* The defendant has the right to introduce testimony supporting the claim that the defendant acted in self-defense. But it is for you to determine, from all the facts and circumstances, and evaluate the conduct of the parties and see whether they come within the legally prescribed defense of self-defense. I will read it to you." (Emphasis added.) The trial court then read the relevant portions of General Statutes § 53a-19.[4] Thereafter, the trial

---

[4] General Statutes § 53a-19 provides: "USE OF PHYSICAL FORCE IN DEFENSE OF PERSON. (a) Except as provided in subsections (b) and (c) of this section, a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

"(b) Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor, or if he is a peace officer or a private person assisting such peace officer at his direction, and acting pursuant to section 53a-22, or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a

court stated that *"[t]his does not mean, however, that the defendant must prove the defense of self-defense. The burden of proof beyond a reasonable doubt remains on the State, and that means that the State must disprove the defense of self-defense beyond a reasonable doubt once the defendant raises it in the case."* (Emphasis added.)

After more fully explaining the law with respect to self-defense, the trial court instructed the jury that "there are circumstances under which the use of physical or deadly physical force are not justified. As I've indicated to you, a person may not use deadly physical force upon another when he knows he can avoid it with complete safety by retreating. Therefore, you have to examine the totality of the circumstances and facts that you find happened at that location at the date and time charged in the information. You've heard this evidence. I'm not going to recapture it for you. This should be fresh in your mind. You'll examine the conduct of everyone that's been testified to here in this court, and you determine what the true facts are and apply this law to those facts.

*"Since the defense of self-defense is a complete defense to any homicide, if you find the defense of self-defense applies and that the State has failed to disprove, beyond a reasonable doubt, the defense of self-defense raised by the defendant, you find the defendant not guilty of any*

demand that he abstain from performing an act which he is not obliged to perform.

"(c) Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force, or (3) the physical force involved was the product of a combat by agreement not specifically authorized by law."

*of these charges with the exception it does not apply to the second count in the information . . . .*

"If you find the defense of self-defense does not apply, that the State has disproved the defense of self-defense beyond a reasonable doubt, you should find the defendant guilty of the crime charged . . . provided, of course, the State has proven all of the elements necessary for any one of the crimes . . . ." (Emphasis added.)

The trial court then concluded its charge to the jury stating: "After that we'll determine the verdict must be unanimous. So you must all agree on it. *You must also agree on the defense of self-defense, that it is either applicable, that it is supported by credible, reliable evidence and the law involved, impressed on the facts you find, is sufficient to show that the defendant is not guilty. You must agree on that. And if you don't, and you have to have a unanimous verdict based on your finding that the self-defense is not disproven or proven, remember that the defendant doesn't have any obligation to prove beyond anything. So he doesn't have any obligation to prove beyond any reasonable doubt. And once the evidence and the claim of self-defense is in the case, it remains the State's burden to disprove that from all the evidence put into this case. You have to determine that. Okay? And you must agree on that whether it does or doesn't exist.*" (Emphasis added.)

After the jury had deliberated for a period of time, the jury requested a clarification on the legal meaning of self-defense. In response to the jury's request, the trial court reinstructed them on the statutory definition of self-defense, and then reminded the jury of the burden of proof, stating that "[s]elf-defense, under the proper circumstances, is a legal defense to the use of deadly force, which would otherwise be criminal. *This does not mean, however, that the defendant must prove*

*the defense of self-defense. The burden of proof beyond a reasonable doubt remains on the State. It means that the State must disprove the defense of self-defense beyond a reasonable doubt once the defendant raises it."* (Emphasis added.)

After additional recitation of the legal requirements of self-defense, the trial court concluded that the jury must "examine all the facts, all the circumstances existing at that time and make those determinations. You must consider whether or not the claim of self-defense by the defendant, by the impact of credib[le] and reliable evidence you believed offered in this case by the State and the accused, all the evidence taken together convinces you beyond a reasonable doubt that despite that defense, the accused would be guilty.

"The burden is on the State. You understand that."

The defendant claims that it is reasonably possible that the above instructions on self-defense, read as a whole, improperly permitted the jury to return a guilty verdict without first finding that the state had met its burden of disproving self-defense beyond a reasonable doubt, thus depriving him of his constitutional right to present a defense.[5] We disagree.

Before turning to the specific claims of the defendant, we note that "[t]he relevant principles of law are not in dispute. [A] fundamental element of due process is the right of a defendant charged with a crime to establish a defense. *Washington* v. *Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); *State* v.

---

[5] The defendant claims that the trial court's self-defense instruction violated both his federal constitutional rights under the fifth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. He concedes, however, that for the purposes of this appeal, the rights guaranteed under both the state and federal constitutions are coextensive. Therefore, we review his claim only under the United States constitution.

*Bethea*, 167 Conn. 80, 83, 355 A.2d 6 (1974). This fundamental constitutional right includes proper jury instructions on the elements of self-defense so that the jury may ascertain whether the state has met its burden of proving beyond a reasonable doubt that the assault was not justified. *State* v. *Corchado*, 188 Conn. 653, 660, 453 A.2d 427 (1982). A defendant who asserts a recognized legal defense, the availability of which is supported by the evidence, is entitled as a matter of law to a theory of defense instruction. *State* v. *Fuller*, 199 Conn. 273, 278, 506 A.2d 556 (1986); see also *United States* v. *Alfonso-Perez*, 535 F.2d 1362, 1365 (2d Cir. 1976). . . . *State* v. *Anderson*, 227 Conn. 518, 526, 631 A.2d 1149 (1993).

"An improper instruction on a defense, like an improper instruction on an element of an offense, is of constitutional dimension. *State* v. *Fuller*, supra, 199 Conn. 278 ([w]here the legislature has created a legally recognized defense . . . this fundamental constitutional right includes a proper jury instruction on the elements of the defense . . . so that the jury may ascertain whether the state has met its burden of disproving it beyond a reasonable doubt); see General Statutes § 53a-12 (a) ([w]hen a defense other than an affirmative defense, is raised at a trial, the state shall have the burden of disproving such defense beyond a reasonable doubt). In either instance, [t]he standard of review to be applied to the defendant's constitutional claim is *whether it is reasonably possible that the jury was misled. State* v. *Anderson*, supra, 227 Conn. 526–27." (Emphasis added; internal quotation marks omitted.) *State* v. *Ash*, 231 Conn. 484, 492–93, 651 A.2d 247 (1994).

"When reviewing the challenged jury instruction, however, we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather

than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. *Blanchette* v. *Barrett*, 229 Conn. 256, 280–81, 640 A.2d 74 (1994)." (Citations omitted; internal quotation marks omitted.) *State* v. *Leroy*, 232 Conn. 1, 7–8, 653 A.2d 161 (1995).

The defendant directs our attention to two parts of the trial court's instructions, which he contends impermissibly created a threshold burden on the defendant to prove that the defense of self-defense applied. Initially, the defendant argues that the trial court's instruction that *"if you find the defense of self-defense applies and* that the State has failed to disprove, beyond a reasonable doubt, the defense of self-defense raised by the defendant, you find the defendant not guilty of any of these charges";[6] (emphasis added); permitted the jury to analyze the defendant's defense using a two step process. First, the jury was to determine whether the defense applied, and second, only if the jury determined that the defense applied, it was to consider whether the state had disproved the defense beyond a reasonable doubt. Thus, the defendant contends that this instruction delegated to the jury the threshold question of whether the defendant had adduced sufficient evidence to raise a claim of self-defense.

Although we agree that if the instruction had delegated this question to the jury, it would have been improper, in our view the defendant's suggested inter-

---

[6] This language appears in the trial court's original charge. Virtually identical language appears in the court's response to the jury's requested reinstruction on self-defense.

pretation is too narrow a reading of the trial court's instruction when read in context.[7] The language that the defendant claims is improper was used in the context of explaining the nature of a complete defense, and not in the context of explaining to the jury how it should reach its conclusion with respect to self-defense. The language of which the defendant complains is immediately preceded by the phrase "[s]ince the defense of self-defense is a complete defense to any homicide," and immediately followed by a statement that if the jury found that self-defense applied it must "find the defendant not guilty of any of these charges." Reading the challenged instruction against this background, we cannot conclude that it was reasonably possible that the language in question misled the jury with regard to the proper substantive rules of law of self-defense.

Any doubt in this regard is resolved by examining the language of the next paragraph of the instruction. The defendant's argument depends upon the premise that the jury was told it was to make the initial determination as to whether the defense of self-defense "applied." Again, we agree that, had the language in question been read to the jury in a vacuum, it is possible that the jury might have concluded that it was obligated to make that initial determination. The trial court, however, gave a clear indication in the very next paragraph that the jury could find that self-defense did not apply only if the state had disproved the defense beyond a reasonable doubt. Specifically, the trial court stated that "[i]f you find the defense of self-defense does

---

[7] Although we affirm the judgment of the trial court because we conclude that the trial court's instructions, read as a whole, accurately state the law with respect to self-defense, we nonetheless caution against using the conjunctive "and" in connecting the applicability of self-defense to the state's burden of disproving that defense. Although it is not necessarily incorrect, it is needlessly confusing and provides no countervailing benefit.

not apply, *that the State has disproved the defense of self-defense beyond a reasonable doubt, you should find the defendant guilty . . . .*" (Emphasis added.) Thus, the jury, in following the trial court's instruction, could only have rejected the defendant's claim of self-defense if it had first concluded that the state had disproved it beyond a reasonable doubt.

Moreover, in a previous portion of the instruction, in the context of explaining the law with respect to self-defense, the trial court defined the state's burden with respect to self-defense with complete accuracy. The trial court stated that "[s]elf-defense, under the proper circumstances, is a legal defense to the use of deadly force, which would otherwise be criminal. *This does not mean, however, that the defendant must prove the defense of self-defense. The burden of proof beyond a reasonable doubt remains on the State, and that means that the State must disprove the defense of self-defense beyond a reasonable doubt once the defendant raises it in the case.*" (Emphasis added.) We conclude that it was not reasonably possible that the jury, ignoring other parts of the instruction, took out of context a single portion of one sentence, and construed that as having given it the responsibility for determining whether the defense applied.

The defendant next directs our attention to a second portion of the trial court's instruction that he claims compounded the trial court's error. The defendant contends that the trial court's statement at the conclusion of its initial charge that "[y]ou must also agree on the defense of self-defense, that it is either applicable, that it is supported by credible, reliable evidence and the law involved, impressed on the facts you find, is sufficient to show that the defendant is not guilty. You must agree on that. And if you don't, and you have to have a unanimous verdict based on your finding that the self-defense *is not disproven or proven,* remember that the

defendant doesn't have any obligation to prove beyond anything. So he doesn't have any obligation to prove beyond any reasonable doubt. And once the evidence and the claim of self-defense is in the case, it remains the State's burden to disprove that from all the evidence put into this case. You have to determine that. Okay? And you must agree on that whether it does or doesn't exist." (Emphasis added.)

Again, portions of the instruction, taken alone, might have led the jury to conclude that the defendant had some obligation to prove by "credible, reliable evidence" that he acted in self-defense. Read in context, however, we believe that it is much more plausible that the jury understood this language as requiring it simply to consider all the evidence that it had heard, apply to that evidence the rules of law stated by the trial court, and determine unanimously whether the state had disproven the defense.

Furthermore, any possibility that the jury had been misled was effectively eliminated during the trial court's reinstruction on self-defense, in which the court correctly stated that "[s]elf-defense, under the proper circumstances, is a legal defense to the use of deadly force, which would otherwise be criminal. This does not mean, however, that the defendant must prove the defense of self-defense. The burden of proof beyond a reasonable doubt remains on the State. It means that the State must disprove the defense of self-defense beyond a reasonable doubt once the defendant raises it." Thus, even if we were to assume that the trial court's earlier instruction may have improperly stated the law with respect to self-defense, the impropriety was cured by the later, proper instruction. *State* v. *Harrison*, 32 Conn. App. 687, 696–97, 631 A.2d 324, cert. denied, 227 Conn. 932, 632 A.2d 708 (1993).

In sum, although we do not approve of all of the language used by the trial court in its instructions, we conclude that when, read as a whole and in proper context, the instructions were adequate to inform the jury of the correct standards by which to gauge the defendant's claim of self-defense. The trial court at numerous times during the instruction reminded the jury that the state had the burden of disproving beyond a reasonable doubt the defendant's claim. Moreover, nowhere in the instruction did the trial court state that the defendant had any burden whatsoever. The jury could only have determined that the defendant had some burden of proof if it took a portion of the trial court's instruction out of context and ignored other portions. We consistently have refused to dissect jury instructions for appellate review. We are not persuaded, therefore, that, in the context of the instructions as a whole, it was reasonably possible that the trial court's instruction misled the jury.

The judgment is affirmed.

In this opinion the other justices concurred.