# STATE OF CONNECTICUT *v.* DAVID B. TERWILLIGER
## (SC 18116)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued September 10—officially released December 29, 2009

*James M. Ralls*, senior assistant state's attorney, with whom, on the brief, were *Patricia M. Froehlich*, state's attorney, *Mark Stabile*, supervisory assistant state's attorney, and *Matthew A. Crockett*, senior assistant state's attorney, for the appellant (state).

*Glenn W. Falk*, special public defender, for the appellee (defendant).

*Opinion*

ROGERS, C. J. The primary issue in this case is whether a trial court's failure to explicitly instruct the jury that the state bears the burden of disproving the defendant's defense of premises theory beyond a reasonable doubt violates a criminal defendant's due process right to a fair trial. The defendant, David B. Terwilliger, was convicted after a jury trial of manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a.[1] The defendant appealed

---

[1] General Statutes § 53a-55a (a) provides: "A person is guilty of manslaughter in the first degree with a firearm when he commits manslaughter in the first degree as provided in section 53a-55, and in the commission of such offense he uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, shotgun, machine gun, rifle or other firearm. No person shall be found guilty of manslaughter in the first degree and manslaughter in the first degree with a firearm upon the same transaction but such person may be charged and prosecuted for both such offenses upon the same information."

to the Appellate Court, which reversed the judgment of conviction and remanded the matter for a new trial. *State* v. *Terwilliger*, 105 Conn. App. 219, 221, 237, 937 A.2d 735 (2008). This court then granted the state's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly hold that the defendant was entitled to an instruction on defense of premises? If not, were the court's instructions on this defense inadequate?" *State* v. *Terwilliger*, 286 Conn. 902, 943 A.2d 1103 (2008). We affirm the judgment of the Appellate Court.

The Appellate Court opinion sets forth the following facts. "On January 5, 2003, at about 8:30 or 9 p.m., Donald Kennedy [Kennedy] arrived at 14 Vandall Street in Thompson, the home of his mother-in-law, Beverly Daniels, and her husband, the defendant, a sixty-three year old former member of the United States Marine Corps with naval law enforcement experience. Kennedy was married to Daniels' daughter, Christine [Kennedy], with whom he had two daughters, Kathryn [Kennedy (Kathryn)] and Shauna [Kennedy], and a son, James [Kennedy (James)]. Kathryn and her four year old daughter . . . lived with Daniels and the defendant. Kennedy previously had lived in the basement at 14 Vandall Street but had moved out about three weeks earlier in December, 2002.

"After Kennedy parked his car in the driveway, he was approached by Ben Monahan, a neighbor. Kennedy exclaimed to Monahan, 'I'm drunk and I'm pissed.' When Steve Gardner, another neighbor, appeared, Kennedy, upset over a fight that Gardner had had earlier with . . . James, grabbed Gardner by the shirt, pushed him against the car and yelled, 'Get the fuck out of here. You hit my son, I'll kill you.' From inside the house, Daniels and the defendant overheard the commotion. Kathryn . . . went outside and asked [Kennedy] to

stop. Daniels asked the defendant to go outside to thwart further violence.

"The defendant armed himself. He testified that he also was carrying a cellular telephone and that on his way out of the house, he told [Daniels] to call the police. The defendant believed that Kennedy had an 'explosive temper' and was like a 'Jekyll and Hyde.' He testified that Kennedy had attacked and threatened to kill him previously and that Kennedy habitually carried a 'thumb release' knife in his back pocket.

"After exiting the house, the defendant approached Kennedy, told him, 'I don't want no fucking trouble out here,' and twice asked Kennedy to leave. According to the defendant, Kennedy pushed him two or three times, accused him of beating up . . . James, and then 'said something about I'm going to kill you.' The defendant kicked Kennedy in the groin. The defendant testified that Kennedy then stated: ' "That didn't hurt," or words to that effect. It didn't do anything to him.'

"According to the defendant's testimony, after Kennedy threatened to kill him, the defendant took his revolver out, warned Kennedy that he would shoot him if he had to, ordered Kennedy off his property and told Kennedy that he was going to call the police. The defendant testified that he subsequently was unable to get away from Kennedy, who blocked him when he attempted to call the police. Kennedy, according to the defendant, 'got smack right in my face,' and stated, 'Now, I'm going to kill you and the mother of the beast. You don't have the balls to stop me, do you?' Because the defendant recalled hearing Kennedy refer to . . . Christine . . . as 'the beast,' the defendant became concerned that Kennedy might harm Christine, Daniels, and Kennedy's granddaughter.

"At trial, the defendant explained, 'And if he killed [me], he could kill her and kill them, too. That's what I had on my mind.' Kennedy then 'lunged down' and

'scared the hell out of' the defendant, who testified that Kennedy's hand was 'coming for my throat.' The defendant shot Kennedy once in the lower chest. Daniels called 911." *State* v. *Terwilliger*, supra, 105 Conn. App. 221–23.

"Medical personnel who arrived on the scene found Kennedy dead with a pocket knife in one of his pockets. The autopsy report would later reveal that at the time of Kennedy's death, his blood alcohol level was 0.15 percent." Id., 223.

Thereafter, the state charged the defendant with murder in violation of General Statutes § 53a-54a.[2] At trial, the defendant requested a jury instruction on defense of premises pursuant to General Statutes § 53a-20.[3] The defendant specifically requested that the trial court

---

[2] General Statutes § 53a-54a (a) provides: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime." The state further charged that the defendant had used a firearm in the commission of the murder in violation of General Statutes § 53-202k.

[3] General Statutes § 53a-20 provides: "A person in possession or control of premises, or a person who is licensed or privileged to be in or upon such premises, is justified in using reasonable physical force upon another person when and to the extent that he reasonably believes such to be necessary to prevent or terminate the commission or attempted commission of a criminal trespass by such other person in or upon such premises; but he may use deadly physical force under such circumstances only (1) in defense of a person as prescribed in section 53a-19, or (2) when he reasonably believes such to be necessary to prevent an attempt by the trespasser to commit arson or any crime of violence, or (3) to the extent that he reasonably believes such to be necessary to prevent or terminate an unlawful entry by force into his dwelling as defined in section 53a-100, or place of work, and for the sole purpose of such prevention or termination."

charge the jury that the state bore the burden of disproving the defendant's defense of premises theory.[4] The state did not object to the defendant's request to charge. The trial court adopted most of the language the defendant proposed in his request to charge, with one key exception.[5] The trial court's written and oral instruc-

---

[4] The defendant proposed that the court address the state's burden of disproving his defense of premises theory in the following final paragraph of his request to charge, which the trial court excluded from its instruction:

"Deadly force is allowed in these three situations even when the person has no fear that he will be harmed by the trespasser, *unless the state proves beyond a reasonable doubt that the circumstances in question did not occur.*" (Emphasis added.)

[5] The trial court's jury instruction consisted of a brief introduction, a self-defense instruction and a defense of premises instruction. The transcript of the trial court's instruction provides in relevant part:

"[Introduction]

"Now I'm going to get into the issues regarding self-defense. [The defendant] has presented some evidence that raises two possible affirmative defenses. The first affirmative defense relates to defending himself and another person: specifically . . . Gardner. The second affirmative defense relates to defending his premises.

"[Self-Defense Instruction]

"First, I will instruct you on the affirmative defenses of self-defense of a person. . . . Self-defense is a means by which the law justifies the use of force that would otherwise be illegal. Once self-defense is raised in a case, the state must disprove the defense beyond a reasonable doubt. . . .

"As I have said earlier, the defendant does not have to prove that he acted in self-defense, but, if self-defense is raised in the case . . . then it is the state's burden to disprove that defense beyond a reasonable doubt. . . .

"In this case, if you find proven beyond a reasonable doubt that [Kennedy] was not using or about to use deadly physical force or inflict great bodily harm upon the defendant or another and if you further find proven beyond a reasonable doubt that the defendant had no reasonable belief that [Kennedy] was using or about to use deadly physical force or about to inflict great bodily harm upon the defendant or another, then the defendant would not be justified in using deadly physical force upon [Kennedy]. You would under those conditions reject the defense of self-defense. Remember, however, that the burden remains on the state to disprove the defense or self-defense beyond a reasonable doubt. . . .

"In summary, you have heard all of the evidence in this case with reference to the defendant's claim of self-defense of the person. The state must disprove this defense beyond a reasonable doubt. If it has not, you must find the defendant not guilty.

"[Defense of Premises Instruction]

tions[6] omitted the paragraph in the defendant's request to charge that would have informed the jury of the state's burden to disprove the defense of premises beyond a reasonable doubt.

"[The] [s]econd self-defense raised by the defendant is the self-defense in the defense of premises. In certain circumstances, our law justifies the use of physical force against another for the protection of premises. The term 'premises' is generally defined as any real estate or building or any structure used for lodging persons overnight or for carrying on business therein. Where a building consists of separate units, such as apartments or offices, any unit not occupied by the actor is a separate building or premise. The right to defend premises does not apply to everyone, but only to persons in possession or control of such premises, or persons privileged to be there, such as visitors or guests of the owner. The right to defend premises does not allow the use of force every time someone enters those premises without consent.

"For example, force may not be used against someone who enters your property merely by accident or mistake. Rather, force may be used only to prevent an actual or attempted criminal trespass. This occurs when a person enters or remains on the premises without permission and refuses to leave after requested to do so. The defense of premises against a criminal trespasser allows only for the use of reasonable force. I will repeat that: the defense of premises, unlike the defense of a person—the defense of premises against a criminal trespasser allows only the use of reasonable force. The test of the degree of force is both a subjective and objective one. You must first view the situation from the perspective of the defendant. That is, whether the defendant believed that reasonable force was necessary, and you must then determine whether the belief was reasonable under the circumstances.

"Deadly force may be used only in three specific circumstances: [1] in defense of a person threatened by deadly force or serious bodily injury by the criminal trespasser; (2) in order to prevent an attempt by the trespasser to commit any other crime of violence; and (3) when a person properly on the premises reasonably believes that deadly force is necessary to prevent or end a forcible, unlawful entry into his dwelling. I'm going to read those three specific instructions again. Deadly force in defense of premises may be used in only three specific circumstances: [1] [i]n the defense of a person threatened by deadly force or serious bodily injury by a criminal trespasser; (2) in order to prevent an attempt by the trespasser to commit any other crime of violence; and (3) when a person properly on the premises reasonably believes that deadly force is necessary to prevent or end forcible, unlawful entry into the dwelling."

[6] Given the complexity of its instructions, the trial court provided the jury with a written copy of the instructions as a court exhibit after it instructed the jury from the bench. In large part, the content of the written instructions was identical to the content of the instructions the trial court delivered

The jury found the defendant guilty of the lesser offense of manslaughter in the first degree with a firearm in violation of § 53a-55a, and the court sentenced him to thirty years incarceration, suspended after fifteen years, with ten years probation. The defendant appealed to the Appellate Court, which reversed the judgment of conviction and ordered a new trial after concluding that it was reasonably possible that the trial court's jury instruction on defense of premises misled the jury. Id., 237. This certified appeal followed.

I

We begin by considering the reviewability of the defendant's instructional claim. The state claims that the defendant failed to preserve his challenge to the trial court's jury instruction and, further, that he is not entitled to review under State v. Golding, 213 Conn. 233, 567 A.2d 823 (1989),[7] because he induced the alleged error. We disagree.

"A party may preserve for appeal a claim that a jury instruction was improper either by submitting a written request to charge or by taking an exception to the charge as given. Practice Book § 16-20." Pestey v. Cushman, 259 Conn. 345, 372–73, 788 A.2d 496 (2002); see also Practice Book § 42-16 ("[a]n appellate court shall not be bound to consider [an instructional] error . . . unless the matter is covered by a written request to

from the bench. The only meaningful difference between the oral instructions and the written instructions was that, unlike the oral instructions, the written instructions did not incorrectly label the defense of premises as the self-defense of defense of premises.

[7] Golding permits a defendant to "prevail on [an unpreserved] claim of constitutional error . . . only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." State v. Golding, supra, 213 Conn. 239–40.

charge or exception has been taken"). In the present case, the defendant claims that the trial court improperly failed to instruct the jury that the state bore the burden of disproving beyond a reasonable doubt that the defendant acted in defense of premises. The defendant further claims that he preserved his claim by submitting a request to charge that articulated the state's burden of disproving the defense of premises.

The Appellate Court found that the defendant failed to preserve his challenge because his request to charge did "not address the issue he now claims was omitted erroneously from the jury charge" and reviewed his challenge under *Golding*.[8] *State* v. *Terwilliger*, supra, 105 Conn. App. 233. In reaching its conclusion that the defendant's claim was unpreserved, however, the Appellate Court failed to adequately account for the final paragraph of the defendant's request to charge, which stated that "[d]eadly force is allowed [in the defense of premises] even when the [defendant] has no fear that he will be harmed by the trespasser, *unless the state proves beyond a reasonable doubt* that the circumstances in question did not occur."[9] (Emphasis added.) See *State* v. *Terwilliger*, supra, 233–34 n.9 (quoting initial portion of defendant's request to charge). The trial court rejected the language proposed by the defendant and failed to incorporate any alternative language into its defense of premises instruction. This requested instruction was sufficient to have placed the trial court on notice that the state bore the burden

---

[8] While we also find the defendant's claim reviewable, we note that the Appellate Court concluded that the claim was unpreserved but reviewable under *Golding*, whereas we conclude that the defendant adequately preserved his claim.

[9] The defendant suggests that this omission may have been due to the fact that the defendant's entire request to charge was not included in his Appellate Court brief. The defendant's request to charge was included, however, in the record on appeal. The defendant also points out that he argued before the Appellate Court that his request " 'specifically covered the state's burden to disprove this defense beyond a reasonable doubt . . . .' "

of disproving beyond a reasonable doubt that the defendant acted in defense of premises. We conclude, therefore, that the defendant's submission of his request to charge preserved his claim that the trial court improperly failed to instruct the jury on the state's burden of proof. See *State* v. *Bryant*, 233 Conn. 1, 2 n.3, 658 A.2d 89 (1995) ("[a]lthough the defendant did not take exception to the trial court's instruction, the defendant had submitted an appropriate written request to charge, and therefore his claim is preserved for appeal").

II

Before analyzing the state's challenge to the Appellate Court's analysis of the trial court's defense of premises instruction, we briefly address the state's claim that the defendant failed to adduce sufficient evidence to warrant such an instruction. In rejecting this argument, the Appellate Court properly noted that although the defendant "bears the initial burden of producing sufficient evidence to raise the issue[s] of self-defense [and defense of premises], this burden is slight." *State* v. *Terwilliger*, supra, 105 Conn. App. 224 n.5; see also *State* v. *Clark*, 264 Conn. 723, 730, 826 A.2d 128 (2003) ("[A] defendant has no burden of persuasion for a claim of self-defense; he has only a burden of production. That is, he merely is required to introduce sufficient evidence to warrant presenting his claim of self-defense to the jury."); cf. *State* v. *Ebron*, 292 Conn. 656, 695–96, 975 A.2d 17 (2009) (citing self-defense burden of production when analyzing defendant's claim that trial court had obligation to charge jury, sua sponte, on defense of premises). A defendant satisfies that burden of production by adducing evidence at trial that is "sufficient to raise a reasonable doubt in the mind of a rational juror as to whether the defendant acted" in defense of premises. *State* v. *Lewis*, 220 Conn. 602, 619, 600 A.2d 1330 (1991). "In determining whether the defendant is entitled to an instruction of self-defense [or defense of premises], we must view the evidence

most favorably to giving such an instruction." *State* v. *Lewis*, 245 Conn. 779, 812, 717 A.2d 1140 (1998). As the Appellate Court correctly noted, as long as the defendant produced evidence at trial to justify the instruction, he is entitled to a defense of premises instruction "no matter how weak or incredible the claim." (Internal quotation marks omitted.) *State* v. *Terwilliger*, supra, 225 n.5; see also *State* v. *Williams*, 258 Conn. 1, 8, 778 A.2d 186 (2001).

Pursuant to § 53a-20, in order to raise defense of premises as a defense, the defendant was required to produce evidence that he reasonably believed that Kennedy was a criminal trespasser and that deadly force was necessary to prevent Kennedy from committing or attempting to commit a crime of violence on the premises. See also *State* v. *Garrison*, 203 Conn. 466, 472, 525 A.2d 498 (1987). Viewing the facts most favorably to the defendant, as we must, *State* v. *Lewis*, supra, 245 Conn. 812, we agree with the Appellate Court that the defendant met his burden of production with respect to a defense of premises charge. The shooting occurred on the defendant's premises in the immediate wake of Kennedy's violent altercation with Gardner and in close proximity to the entry to the defendant's home. The defendant testified as to his belief that Kennedy posed an immediate threat to the defendant's family. The defendant further testified that he was aware of Kennedy's explosive temper; that Kennedy habitually carried a thumb release knife; that Kennedy threatened to "kill [the defendant] and the mother of the beast"; and that Kennedy's aggressive and threatening behavior continued even after the defendant pulled out his revolver, warned Kennedy that he would shoot, and ordered Kennedy off his property. This evidence was sufficient to raise a reasonable doubt in the mind of a rational juror as to whether the defendant had acted in defense of premises.

The state claims that the defendant's version of the events falls short of the requirements to warrant a

defense of premises jury instruction because Kennedy was not a criminal trespasser. The state claims that the facts of this case are similar to the facts in *State* v. *Garrison*, supra, 203 Conn. 466, in which the defendant raised defense of premises as a justification for shooting his sister's boyfriend, after the defendant had demanded that the victim leave his sister's apartment. Id., 469, 472. In *Garrison*, the trial court found that the state had met its burden of proving that the shooting was not justified by defense of premises by producing evidence that, due to the nature of his relationship with the sister, the victim was not a criminal trespasser. Id., 472–73. Because the state had established that the victim was privileged to remain in the sister's apartment by showing that the victim may not have interpreted the sister's equivocal demands for him to leave as an absolute revocation of his privilege to remain in the apartment, the defense of premises could not apply. Id., 472–74. *Garrison*, however, was tried to the court. Because the evidentiary issue in that case was whether the record contained sufficient evidence to support the trial court's finding that the victim was not a criminal trespasser, our affirmation of the trial court's factual finding, under a sufficiency of the evidence standard, does not guide our review of whether the defendant in the present case has satisfied the slight burden of production required to warrant a defense of premises instruction. See *State* v. *Sivri*, 231 Conn. 115, 126, 646 A.2d 169 (1994) (The court quoted the standard for reviewing sufficiency of evidence claim as follows: "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed . . . the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." [Internal quotation marks omitted.]).

The defendant in this case presented evidence that just prior to the shooting Kennedy had assaulted Gard-

ner in the defendant's driveway, that Kennedy threatened to kill both the defendant and Daniels and that the defendant revoked any license Kennedy may have had to remain on the premises by ordering Kennedy to leave. The state analogizes these facts to the question of equivocal revocation raised in *Garrison*. Id. The state claims that Kennedy was not a criminal trespasser because, despite the defendant's order for him to leave, Daniels, a co-owner of the property, had not withdrawn Kennedy's privilege to remain and did not believe that Kennedy was trespassing. Viewing the facts most favorably to the defendant, we find that, for the purpose of justifying a defense of premises jury instruction, the defendant has produced evidence sufficient to support his allegation that Kennedy was a criminal trespasser.

### III

We next consider the state's claim that the Appellate Court improperly concluded that the trial court's jury instruction on defense of premises, as a whole, misled the jury. We disagree.

"A fundamental element of due process is the right of a defendant charged with a crime to establish a defense. . . . *State* v. *Adams*, 225 Conn. 270, 283, 623 A.2d 42 (1993). An improper instruction on a defense, like an improper instruction on an element of an offense, is of constitutional dimension. . . . [T]he standard of review to be applied to the defendant's constitutional claim is whether it is reasonably possible that the jury was misled. . . . In determining whether the jury was misled, [i]t is well established that [a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect [on] the jury in guiding [it] to a correct verdict in the case. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . .

*State* v. *Clark*, [supra, 264 Conn. 729–30]; see also *State* v. *Prioleau*, [235 Conn. 274, 284, 664 A.2d 743 (1995)]; *State* v. *Jimenez*, 228 Conn. 335, 339, 636 A.2d 782 (1994). . . . In reviewing the trial court's failure to charge as requested, we must adopt the version of facts most favorable to the defendant which the evidence would reasonably support. . . . A challenge to the validity of jury instructions presents a question of law over which [we have] plenary review." (Citations omitted; internal quotation marks omitted.) *State* v. *Singleton*, 292 Conn. 734, 745–46, 974 A.2d 679 (2009).

The state claims that, under a commonsense reading of the entire instruction, the jury necessarily would have concluded that the state bore the burden of proof, and that, therefore, the jury was not misled. The defendant counters that the trial court's defense of premises instruction violated his right to due process by failing to properly inform the jury that the state bore the burden of disproving his defense of premises theory beyond a reasonable doubt.

Although the state concedes that, standing alone, the defense of premises portion of the trial court's instructions failed to address the state's burden of proof, the state claims that the trial court's instruction, when read in its entirety, did not mislead the jury because the trial court actually characterized the defense of premises as an alternate form of self-defense and repeatedly informed the jury of the state's burden to disprove self-defense. See footnote 5 of this opinion. Specifically, the trial court began its oral instruction on defense of premises by stating that the "[s]econd *self-defense* raised by the defendant is the *self-defense in the defense of premises*." (Emphasis added.) The trial court also concluded its murder instruction as follows: "That is the charge of murder defined . . . and all of the *self-defense* charges that have been raised by the issues presented in this case." (Emphasis added.)

The state contends that, because the trial court characterized defense of premises as self-defense and told the jury that the state must disprove self-defense beyond a reasonable doubt, the jury necessarily understood that the state's burden to disprove self-defense applied to both portions of the trial court's "self-defense" instructions—namely, the "self-defense of the person" portion and the "self-defense in the defense of premises" portion. In support of this claim, the state relies almost exclusively on the trial court's inaccurate labeling of the defense of premises as the "self-defense in the defense of premises." We are not persuaded.

Other than this single labeling error by the trial court, there is little else in the jury instructions that could lead a reasonable juror to conclude that the burden of proof set forth in the self-defense portion of the instructions also applied to the defense of premises. The structure of the instructions makes it clear that the trial court addressed self-defense and the defense of premises as two *independent* defenses rather than as subcategories of the same defense. The only portion of the instructions that plainly applied to both defenses was the trial court's introduction, which merely established that the defendant had presented evidence raising two *separate* "affirmative" defenses[10] without any mention of the burden of proof or other links between the two defenses.[11] The trial court then proceeded to address each defense independently. Unlike the portion of the court's instructions relating to lesser included

_____

[10] As the state recognizes in its brief, the trial court mistakenly labeled self-defense and defense of premises as affirmative defenses. See, e.g., *State* v. *Singleton,* supra, 292 Conn. 747 (" 'self-defense . . . is a defense . . . rather than an affirmative defense' "); *State* v. *Ebron,* supra, 292 Conn. 695 (defense of premises and self-defense are justification defenses rather than affirmative defenses).

[11] The introductory instruction provided: "Now I'm going to get into issues regarding self-defense. [The defendant] has presented some evidence that raises two possible affirmative defenses. The first affirmative defense relates to defending himself and another person . . . . The second affirmative defense relates to defending his premises."

offenses, in which the court instructed the jury to refer back to its self-defense instruction, the court presented the self-defense and defense of premises instructions separately without ever mentioning or referring to the other defense.

Moreover, the trial court's mischaracterization of defense of premises as a form of self-defense does not appear in the written jury instructions. Thus, the written instructions, which the trial court provided to the jury for consultation during their deliberations, did not include any language that could reasonably suggest that any of the self-defense instruction applied to the defense of premises instruction. We conclude that, just as a single misstatement of law does not necessarily render an otherwise adequate instruction constitutionally inadequate, a single labeling error will not necessarily cure the infirmities of an otherwise inadequate instruction. See *State* v. *Mukhtaar*, 253 Conn. 280, 309–10, 750 A.2d 1059 (2000). In fact, the statement of the court incorrectly referring to defense of premises as a form of self-defense enhanced the likelihood of jury confusion.

In support of its claim to the contrary, the state relies on the Appellate Court's conclusion that the trial court's mislabeling of self-defense and defense of premises as self-defense of person and self-defense of premises was harmless. *State* v. *Terwilliger*, supra, 105 Conn. App. 229–33. In reaching this conclusion, however, the Appellate Court was responding to the defendant's claim that the trial court's mislabeling "minimized his defense of premises theory by characterizing it as a form of self-defense." Id., 229. The Appellate Court correctly rejected the defendant's claim that the mislabeling of the defense of premises, in and of itself, deprived him of the benefit of that defense by noting that "despite some superfluous nomenclature, the instructions properly articulated the specific elements of defense of premises . . . ." Id. That finding, however, was not

made in the context of the Appellate Court's analysis of what impact the mislabeling might have had on the allocation of the burden of proof. In fact, as we have already indicated, the Appellate Court reasonably rejected the state's argument that the trial court's mislabeling of the defense of premises as an alternate form of "self-defense" meant that the trial court's self-defense instruction applied to both the defense of persons and defense of premises.[12] Id., 236–37. Further, in its analysis of the defendant's burden of proof challenge, the Appellate Court emphasized that, although self-defense and defense of premises are similar, they are "distinct statutory defenses" and "[c]onflating them is problematic . . . ." Id., 237.

The Appellate Court also correctly identified the lack of symmetry between the language used in the trial court's self-defense and defense of premises instructions as a factor in its analysis. Id., 236. Based on the trial court's emphasis of the state's burden in its self-

---

[12] Specifically, the Appellate Court rejected "the state's argument that the court's instructions on self-defense, in combination with the court's characterization of defense of premises as a form of self-defense, made clear to the jury that it must return a verdict of not guilty if the state failed to disprove the defense of premises defense." *State* v. *Terwilliger*, supra, 105 Conn. App. 236–37. The trial court's "self-defense of persons" instruction repeatedly emphasized that the state bore the burden of disproving the defendant's theory and unambiguously instructed the jury that the consequence of the state's failure to disprove that defense beyond a reasonable doubt was that the jury must find the defendant not guilty.

Because the trial court's defense of premises instruction was silent on both the state's burden and the consequences of failing to satisfy that burden, the state's theory that the trial court's mislabeling linked the instructions together must apply equally to both the burden and the consequences. The mislabeling either adequately bound the instructions together so that the content of one reciprocally applied to the content of the other or it failed to establish the requisite link. The Appellate Court could not have found that the trial court's mislabeling of the defense of premises linked the two instructions such that the portion of the self-defense instruction relating to the state's burden applied to both instructions without finding that the trial court's articulation of the consequences for failing to satisfy that burden also applied to both instructions.

defense instruction and the trial court's failure to mention the state's burden in its defense of premises instruction, a reasonable juror could have concluded that the state bore the burden of disproving self-defense, but not defense of premises. Indeed, a reasonable juror could have inferred from the court's emphasis of the state's burden in the self-defense instruction and the absence of any discussion of the burden in its defense of premises instruction that the state's burden of disproving the defendant's theory was a feature unique to self-defense. Thus, rather than compensating for the trial court's failure to articulate the state's burden in its defense of premises instruction, the thoroughness of the trial court's self-defense instruction could just as easily have exacerbated the potential for confusion. We, therefore, agree with the Appellate Court that "[e]ach defense warrants complete and constitutionally adequate instructions"; id., 237; and conclude that it is reasonably possible that the trial court's instructions on defense of premises misled the jury to believe that the burden was on the defendant to prove the defense.[13]

Accordingly, we hold that the trial court violated the defendant's due process right to a fair trial by failing to explicitly instruct the jury that the state bore the burden of disproving the defendant's defense of premises theory. Even when the entire jury instruction is read as a whole, the fact that the defense of premises

---

[13] The state claims that, even if the trial court's instructions misled the jury, any error was harmless because "the defendant did not truly rely on [the] defense of premises, his evidence was incredible and the state's case was strong." We disagree. Although, in the state's view, the defendant did not truly rely on that defense, the defendant did request and the court did grant a defense of premises jury instruction. As we discussed in part II of this opinion, the defendant provided sufficient evidence to warrant a defense of premises instruction. The defendant, therefore, was entitled to a constitutionally adequate instruction on that defense. This court is reluctant to find harmless an instructional error that relieves the state of its burden of proof beyond a reasonable doubt because "a misdescription of the burden of proof . . . vitiates all the jury's findings." *Sullivan* v. *Louisiana*, 508 U.S. 275, 281, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993).

portion of the instructions was completely silent on the burden of proof could have misled a reasonable juror.

Finally, in addition to addressing the question of whether the instruction as a whole informed the jury that the state bore the burden of disproving the defendant's defense of premises theory, the Appellate Court focused as well on the more specific question of whether the trial court instructed the jury that "the jury . . . was bound to find the defendant not guilty if it found that the state had failed to disprove the claimed defense . . . ." (Internal quotation marks omitted.) Id., 235, quoting *State* v. *Montanez*, 71 Conn. App. 246, 253, 801 A.2d 868, cert. denied, 261 Conn. 935, 806 A.2d 1069 (2002). The Appellate Court held that the trial court's defense of premises instruction was constitutionally inadequate because it failed to define "the legal consequences of the jury's finding that the state failed to disprove the defense." *State* v. *Terwilliger*, supra, 105 Conn. App. 237.

Although we have concluded that the trial court's defense of premises instruction was required to inform the jury that the burden is on the state to disprove the defense, neither the defendant nor the Appellate Court has cited any case other than *Montanez* for the proposition that the constitution requires that the trial court must also instruct the jury of the consequences of the state's failure to meet its burden. Id., 235–37. We recognize that a discussion of the consequences of the state's failure to meet its burden is advisable as it may enhance a jury's understanding of the defense. The omission of such a discussion, however, does not by itself prevent the jury from understanding that the state must disprove the defendant's defense theory. Had the trial court simply included the final paragraph of the defendant's request to charge, which identified the state's burden without mentioning the consequences of the state's failure to meet that burden, the trial court's instructions would have satisfied the minimum requirements of due

process. Accordingly, to the extent that *Montanez* establishes a constitutional requirement that every defense of premises or self-defense instruction must include a discussion of the consequences of the state's failure to satisfy its burden of disproving the defendant's theory of defense, we reject and hereby overrule that holding.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.